THE STATE, EX REL. JOHANNA GEHRMANN,

*v.*

GEORGE OSBORNE, warden.

[Decided December 6th, 1911.]

1. Under *2 Gen. Stat. 1895 p. 1622* § *2,* providing that persons committed or detained under a final judgment of any competent tribunal of civil or criminal jurisdiction shall not be entitled to prosecute a writ of *habeas corpus,* one claiming that she was imprisoned under a judgment which the court had no jurisdiction to pronounce was entitled to review by *habeas corpus.*

2. Where accused pleaded *nolo contendere,* and sentence was postponed. she was in no different situation, as regards her right to review by *habeas corpus,* than she would have been, had she been convicted on a trial, or had pleaded guilty.

3. *P. L. 1898 p. 885* § *55,* as amended by *P. L. 1908 p. 429,* provides that the court which has sentenced a prisoner may, on application during the term, open and vacate the same and grant a new trial and discharge

the defendant on bail, or may, on its own motion, open or vacate the judgment and resentence defendant, and discharge him from custody on bail, pending such resentence, provided that the court shall not have power to open and vacate any judgment entered on any conviction for a high misdemeanor after the term has expired at which the judgment was entered.—*Held*, that such act did not apply to a case where, after accused had pleaded *nolo contendere*, sentence was postponed.

4. On conviction of a person accused of crime, judgment need not necessarily be pronounced at the term at which the conviction is had.

5. The term "suspended sentence," as used in criminal law, refers to the suspension of the execution of a sentence already imposed, and not correctly to the suspending of sentence.

6. In the absence of statute or objection, the courts have power to suspend the sentencing of a convicted person, and at any time thereafter, either before or after the term, to cause accused to be brought before it and impose such sentence as would have been proper immediately after the conviction.

7. Jurisdiction of a court to suspend the sentencing of a person convicted of an offence and to thereafter impose sentence, either before or after the term, was not taken away by *P. L. 1900 p. 289*, repealed by *P. L. 1906 p. 104 ch. 74*, and re-enacted by chapter 75, page 104 of the laws of that year, providing a system of probation in the punishment of criminals.

8. Error of any sort in imposing a sentence on accused, or abuse of discretion amounting to legal error, can only be corrected by writ of error, and is not reviewable on a writ of *habeas corpus*.

---

This is a hearing upon a writ of *habeas corpus* issued by me under the statute. The petition of Johanna Gehrmann set forth that she was imprisoned at the state prison in Trenton; that the cause or pretence of her confinement was a commitment issued out of the court of quarter sessions of the county of Hudson, a copy of which was annexed, and that the imprisonment was illegal because the said court had no jurisdiction to make the judgment contained in the commitment, because there was a plea of *non vult* entered on the 28th of April, 1909, for a high misdemeanor, sentence was suspended, and costs were taxed; that thereafter, after the term at which the said plea of *non vult* had been made and judgment pronounced thereon, and on the 21st day of September, 1911, the said court changed the said judgment to imprisonment for a period of five years, which it had no power to do under the statute.

The warden of the state prison made return to the writ, setting forth that the prisoner was detained in his custody by virtue of a warrant issued out of the court of quarter sessions of the peace (*sic*) of the county of Hudson, which said warrant he gives as follows:

"IN THE STATE OF NEW JERSEY ⎱ Sur Indictment No 3, April
  *vs.* ⎰ Term, 1909, for
  JOHANNA GEHRMANN. ⎰ Conviction of Abortion.

"On motion of the prosecutor of the pleas the court ordered the sheriff to set the defendant to the bar to receive her sentence, and she being accordingly set to the bar, the court did thereupon order and adjudge that the defendant Johanna Gehrmann be imprisoned in the state prison of this state for the term of five (5) years at hard labor upon this conviction, that she pay the costs of this prosecution, and that she be further imprisoned from and after the expiration of the said term of five (5) years until the said costs of this prosecution are paid."

The prisoner then traversed the return, setting forth that she should not be detained by reason of anything in the warrant alleged, because the said warrant of commitment was void as the said court had no jurisdiction to make the same, setting forth that the said Johanna Gehrmann, on the 14th of June, 1909, being indicted for a high misdemeanor, pleaded *non vult,* and on the 17th of June, 1909, judgment was given against her that sentence be suspended, and thereafter, on the 1st of April, 1910, costs were taxed against her, and thereafter, on the 21st of April, 1911, a new judgment was pronounced against the said Johanna Gehrmann, as set forth in the warrant of commitment. And the petitioner alleged that by the law the said court was without jurisdiction to pronounce the said judgment of September 21st, 1911, both by reason of the common law and by reason of the statute entitled "An act relating to courts having criminal jurisdiction and regulating public proceedings in criminal cases" (*Rev. 1898 p. 886 § 55*), and the amendment thereto (*P. L. 1908 p. 429*).

Notice was served upon the prosecutor of the pleas of the county of Hudson, in accordance with the practice, and on the 6th of November, 1911, the attorney of the petitioner and the prosecutor entered into a stipulation that the paper then filed contained a true copy of the record of the court of quarter ses-

sions in the matter of the *State* v. *Johanna Gehrmann.* Said stipulated facts, as set forth in the annexed paper, were as follows:

"THE STATE
vs.             } Indictment
JOHANNA GEHRMANN.  } Abortion.

32 S
Apr. 09

"April 28, 1909, the defendant Johanna Gehrmann being charged pleads not guilty, and she and her bail, Arthur W. Hilchner, 345 Clinton ave., West Hoboken, enters with a recognizance in the sum of fifteen hundred dollars, each conditioned that defendant appear from day to day for trial.

1909

June 1    "Case called and put off.

June 14   "Deft. Johanna Gehrmann being placed to the bar retracts plea.

"Non vult. Bail continued for sentence.

June 17   "Defendant Johanna Gehrmann, being placed to the bar, sentence was postponed.

1911      "Sentence by court is hereby ordered revoked and deft. is
Aug. 9    ordered held for re-sentence.

Sept. 21  "The deft. being placed to the bar is sentenced to be confined in state prison at hard labor for a period of five years, and thence until costs of prosecution are paid.

"It is admitted that the clerk of the court has taxed the costs up to and including the date of the postponed sentence, and that the record page is marked 'Settlement April 1, 1910, $48.06. Costs taxed.' "•

It does not appear that the court made any judgment or order for the taxation or payment of costs, excepting in the judgment of September 21st, 1911; and there is, therefore, nothing in the point urged by the petitioner that there was any judgment for costs against her prior to the judgment of September 21st, 1911.

*Mr. Alexander Simpson* and *Mr. I. Faerber Goldenhorn,* for the petitioner.

*Mr. George T. Vickers,* assistant prosecutor of the pleas, *contra.*

GARRISON, V. C. (after stating facts).

The questions presented are of importance not only to the prisoner but to the public, and I have given the matter much time and consideration.

The first question, of course, is whether a proper case is presented for the application of the jurisdiction exercisable under the writ of *habeas corpus*. It is familiar law that a writ of *habeas corpus* is not properly usable to take the place of a writ of error. Our statute concerning *habeas corpus* specifically provides (*Gen. Stat. p. 1622 § 2*)—

"that the following persons shall not be entitled to prosecute such writ: * * * II. Persons committed or detained by virtue of the final judgment or decree of any competent·tribunal of civil or criminal jurisdiction * * *."

It is not suggested that the court of quarter sessions was not a competent tribunal of criminal jurisdiction, that it had not specific jurisdiction with respect to the crime of abortion, nor that the judgment which it rendered, standing by itself, was not a proper judgment and fully within the jurisdiction of the court.

It is alleged, on behalf of the prisoner, that the judgment was invalid—*first,* because the court of quarter sessions had no further power over the petitioner after sentence was postponed; *second,* that the conviction in this case, being for a high misdemeanor, and a term having passed at which the sentence was postponed, the court could not, in view of the act of 1898 (chapter 237, section 55, page 885), and the amendment thereto (*P. L. 1908 p. 429*), open and vacate that judgment and resentence the defendant.

It will thus be seen that the petitioner justifies her use of the writ of *habeas corpus,* not by alleging an error committed by the trial court which would require the use of a writ of error to obtain correction thereof, but by alleging that the judgment or sentence was invalid, and that the court had no jurisdiction at the time that it pronounced judgment or sentence to pronounce the same.

If she sustains this contention, it would seem, under the authorities in this state, that she is entitled to the writ. Whether she sustains the same can only be determined by a careful consideration of the facts and the law applicable thereto.

Mr. Justice Swayze, in *In re Marlow, 75 N. J. Law (46 Vr.) 400* (at *p. 402*), after citing the provision of the *Habeas Corpus*

act, to which I have alluded, and calling attention to the fact that the final judgment of the "competent tribunal" there spoken of obviously applies only to valid legal judgments, said (concerning the power of review on *habeas corpus*), "that such a review can be had where there was a lack of jurisdiction in the trial court is not doubted. The difficult question always is to distinguish between a lack of jurisdiction to pronounce the particular judgment and a mere error in law or fact to be redressed by writ of error in the one case and by motion (taking the place of the old writ of error *coram nobis*) in the other case," calling attention by citation to many authorities.

If, however, the insistence of the petitioner is that the judgment of the competent tribunal of criminal jurisdiction was invalid, direct authority is found for her use of the writ in the cases of *State* v. *Gray* (*Supreme Court, 1875*), *37 N. J. Law* (*8 Vr.*) *368; State* v. *Addy* (*Supreme Court, 1881*), *43 N. J. Law* (*14 Vr.*) *113*, and *In re Marlow, supra,* and in the following authorities, which may be consulted by one who desires a more extended consideration of the whole subject: *Clifford* v. *Heller* (*Supreme Court, 1899*), *63 N. J. Law* (*34 Vr.*) *105; 57 L. R. A. 312*, and notes; *Spell. Inj. Ex. Rem.* (*2d ed.*) §§ *1202, 1206, 1211, 1215, 1216; Ex Parte Parks, 93 U. S. 18; 23 L. Ed. 787* (*1876*), and see cases and notes in *11 L. R. A. 694; 14 L. R. A. 128; 38 L. R. A. 675; 48 L. R. A. 220; 56 L. R. A. 513* (at *p. 539*); *13 L. R. A.* (*N. S.*) *518; 25 L. R. A.* (*N. S.*) *483.*

This brings us then to the consideration of the question of whether the judgment of the court in this case was invalid.

The first question which calls for consideration is whether the fact that the defendant pleaded *nolo contendere,* and sentence was thereupon postponed, places her in any other situation than she would have been in had she been convicted upon trial or had pleaded guilty.

This plea, in which the defendant pleads in the first person *nolo contendere,* and the clerk properly enters it in the third person, *non vult contendere,* was used at common law, and, while unknown in many of our sister states, is used in some of them, and, so far as our books show, has always been usable in this jurisdiction. *Peacock* v. *Hudson Quarter Sessions* (*Supreme*

*Court, 1884), 46 N. J. Law (17 Vr.) 113; State* v. *Henson.*
*(Court of Errors and Appeals, 1901), 66 N. J. Law (37 Vr.).*
*601.*

Concerning this plea, it is said, in *2 Encycl. Pl. & Pr. 787:*

"A plea of *nolo contendere* is, as its name indicates, a declaration that
the defendant will not contend as to his guilt or innocence ; and although
it is not common, it is sometimes allowed in misdemeanors as a sort of
compromise between the prosecuting officer and the defendant. It is
pleaded only by leave of the court, but its effect when accepted differs but.
little from that of a plea of guilty, as far as the same suit is concerned.
Upon this plea it is not necessary or proper that the court should ad-
judge the party to be guilty, but sentence should be passed forthwith."

And the text is borne out by the New Jersey authorities above
cited, by those in the notes to the text, and by those next cited
herein, which latter further show that upon the acceptance of
this plea the court is unrestricted by law with respect to the
sentence which it may impose within the limits fixed by the
statute for the punishment of the specific offense, whatever may
otherwise be the case if the court enters into an arrangement to
fix a light penalty. *Commonwealth* v. *Ferguson, 44 Pa. Sup. Ct..*
*Rep. 626; Commonwealth* v. *Stewart, Ibid. 620; State* v. *Her-*
*lihy (Me., 1906), 66 Atl. Rep. 643; State* v. *Siddall (Me.,.*
*1907), 68 Atl. Rep. 685.*

The fact that very often the plea is accepted by the court,.
after a consultation with the prosecutor and the prisoner in
which it is agreed that a light punishment shall be inflicted, does.
not alter the situation ; and we are not concerned with, and I
shall not, therefore, attempt to determine what the legal effect
would be of an alleged violation by the court of an agreement to
lightly sentence one who should thus be induced to plead *nolo*
*contendere.*

The next matter to be considered is whether the act of 1898,.
chapter 237, section 55, as amended by the act of 1908, page
429, which is relied upon by the petitioner, applies to the case
in hand ?

The original act and its amendment, after providing that the
court before which a conviction is had, and which has sentenced
the prisoner, may, upon application for a new trial, have power-

at any time during the term at which the judgment was entered, to open and vacate the same and grant a new trial and discharge the defendant from custody upon bail pending the new trial, and may, upon application of the defendant, or on its own motion, open and vacate the judgment entered on any conviction, and re-sentence the defendant as right and justice may seem to require, and discharge the defendant from custody upon bail, pending such resentence, provided (and this was added by the act of 1908) :

"that the court shall not have power to open and vacate any judgment entered on any conviction for a high misdemeanor after the term has expired in which the judgment was entered."

For this act to have any application whatever to the case at bar, it must first be found that there was a sentence pronounced at one term, which sentence was sought to be opened or vacated after the time had expired in which it was entered.

It is true that whoever kept what is called the "record" of the court of quarter sessions in the case in hand, did enter thereon, under date of August 9th, 1911, the following: "Sentence by court is hereby ordered revoked and deft. is ordered held for re-sentence." The only previous entry in which anything whatever is said about judgment or sentence is dated June 17th, 1909, and reads as follows: "Defendant, Johanna Gehrmann, being placed to the bar, sentence was postponed." Unless, therefore, it is proper to hold that the action of the court on the 17th of June, 1909, in postponing the sentence was, in effect, imposing sentence or rendering judgment, the act in question has no application whatever, and the entry of the clerk is negligible.

The petitioner throughout has treated a postponement of sentence as equivalent to a suspension of sentence, and each of them as equivalent to what should more precisely be called "suspension of sentencing." If it should be found in this state that the action of a court in postponing sentence was equivalent to what is incorrectly termed "suspension of sentence" (which is really a suspension of sentencing), and that such action was in effect pronouncing a judgment or sentence, then it might be that this act would have application. As will be shown hereafter, some

courts have held that an indefinite suspension of sentence was practically a sentence that the defendant shall go without punishment. (See Mr. Justice Swayze's attribution of meaning to the words "sentence suspended" in *Blazier* v. *Keffer* (*Supreme Court, 1911*), *79 N. J. Law (50 Vr.) 252*, which was not a case of indictment and trial, but a conviction in a summary proceeding for violation of a city ordinance.)

If it shall be found to be the law in this state that suspending the pronouncing of sentence is a final judgment or sentence, then the defendant, in any event, as it seems to me, would succeed without regard to whether or not the act in question applied.

In *State* v. *Tolla* (*Supreme Court, 1906*), *73 N. J. Law (44 Vr.) 249*, it was held that "after the term in which the judgment was regularly perfected, the court cannot disturb or alter the judgment in a matter of substance   *   *   *," citing authorities.

I shall, therefore, leave specific consideration of the application of this statutory law, excepting as its consideration may be affected by the conclusions reached with respect to the common law and the practice in New Jersey thereunder in regard to the subject matters.

This, then, brings us to the nub of the case, and the important matter requiring consideration, and that is: what is the effect, upon the question of jurisdiction and power to subsequently sentence, of postponing sentence at one term and not inflicting any punishment until after that term, and until after a considerable period has passed?—the period in the case at bar being two years and three months.

To one approaching this subject for the first time, the initial question which presents itself is whether there is any legal foundation for the popular conception held, I think by most lawyers, that a sentence, which is the judgment of the court, to be legal and effective, must be pronounced at the term at which the conviction is had?

So far as my researches go, this conception has no basis upon which to rest; that is to say, at common law, and where the matter is not regulated by statute, there does not appear to have

been any legitimate objection to a sentence imposed after the term at which the conviction was had. *19 Encycl. Pl. & Pr., tit. "Sentence and Judgment," 446:*

> "Ordinarily the judgment, unless for a good reason it is delayed, should be pronounced at the trial term of the court; but it is well settled that in the absence of a statute to the contrary, the power to pass sentence may be exercised after the term at which the defendant was convicted, and even by a different judge holding the same court."

Citing authorities; in addition to which see *State* v. *Aaron (Supreme Court, 1818), 4 N. J. Law (1 South.)* \*231; *Hall* v. *Patterson, 45 Fed. Rep. 352; Pegalow* v. *State, 20 Wis. 65; Ex Parte Williams, 26 Fla. 310; State* v. *Wright (Ark., 1910), 131 S. W. Rep. 688,* and see cases cited in note to page 447 of *19 Encycl. Pl. & Pr.*

In note 2, page 446, of the same work, it is said:

> "A denial of this power would be highly inconvenient and prejudicial to the administration of criminal justice as preventing the suspension of sentence in cases where it is proper or necessary,"

and, of course, all the cases which are hereinafter cited by me which maintain the right to impose sentence after a suspension of sentencing are exactly in point on the right to sentence after the term at which the conviction was had.

There, therefore, seems to be no difficulty with those cases in which the pronouncing of the judgment or sentence is postponed from time to time for a legitimate purpose, and which finally result in a judgment being pronounced. The real difficulty arises where the court either postpones sentence indefinitely (that is, without fixing a time), or does what is termed "suspending sentence." It is well to dwell just for a moment upon the terms to be used, as they shed light upon the authorities to be cited. The term "suspending sentence" has been indiscriminately applied by many courts in two entirely different situations. In one use it has been applied to cases where the court did not impose any sentence whatever, but suspended the pronouncing of sentence; and it has been also applied to cases where a sentence has been pronounced, but the court has sus-

pended the operation or execution of the sentence. Some of the authorities which are cited in support of the principle that the court has not power to suspend sentence indefinitely will be found to apply to the latter use of the word, and to hold that where a court has determined and pronounced what punishment should be suffered, it is *functus* and has not, excepting when legislatively authorized, power to suspend the operation of the sentence which it has pronounced.

Since the case in hand does not call for a consideration of the power of a court to suspend the operation of an imposed sentence, it is only useful for us to refer to it so as to be sure that an authority dealing with the power of the court in the matter of suspending sentence related to the suspension of the pronouncement of a sentence, and not to the suspension of the execution of an imposed sentence.

Whether or not postponing sentence indefinitely (that is, without specifying the date to which it is postponed), and suspending the pronouncing of a sentence indefinitely (that is, similarly, without fixing a day) are two different ways of phrasing an identical act, must next be considered. If we are to be governed by shades of meaning of the words used, I am inclined to think that there is a difference. I think that the word "postponed" connotes the taking up of the matter again, whereas, the word "suspend," while it is sometimes used to convey that idea, more exactly connotes the putting aside of the matter without any necessary implication that it is ever to be taken up again. When we say "The contractor has suspended operations on the buildings," or a merchant "has suspended payment of his obligations," we intend to convey the idea that there has been something more than a mere postponement, something less than an absolute and final cessation—the exact idea would seem to me to be a stopping or cessation which is more than likely to be permanent, but may not be.

James G. Blaine, in his "Twenty Years in Congress," volume 2, chapter 18, page 453, says, "The president was left at liberty to suspend any officer without assigning a cause, and to nominate his successor." In this last instance it will be seen that "suspend" was used in the sense of a definite ending of the officer's

right, not an intermediate stay of something to be thereafter resumed.

However, I do not think it would be proper to base a determination upon the etymology of the words used, or upon nice distinctions with respect to their use, but rather upon the popularly understood meaning and the substantive effect. In this view, I think it is of little moment in the case at bar. that the entry read "sentence was postponed," instead of "sentence was suspended." If I err in thus treating the matter, the error is in favor of the petitioner, because, undoubtedly, the court has power to postpone (leaving aside, now, the question of indefiniteness), whether it has power to do what it may be proper to call "suspend," or not. In my subsequent consideration I shall, therefore, treat what was done, as, in effect, a suspension of sentencing.

Upon the question of whether or not a court, irrespective of legislation, has power to suspend sentence indefinitely, authorities differ. Since there is no statute in this state upon the subject, it must be determined by what we find the common law to be.

Upon this subject there is great contrariety of opinion and direct conflict of decision. Some of the courts draw the inference from the English precedents that at the common law as there administered there was nothing in the nature of an indefinite suspension of sentence. Other courts, from the same sources, draw an exactly opposite inference. Some deny that there was any power to suspend sentence at all; others say that there was power to do so temporarily; while others say that there was power to do so indefinitely.

Such original investigation into the English authorities as I had time to make did not serve to satisfy me that the situation, as there existing, was clearly ascertainable. There is little in the books upon the subject, and much is left to inference. Enough, however, can be gathered from the English precedents to show that courts of criminal jurisdiction exercised the power of delaying the imposition of a sentence for various reasons, and of delaying the operation of an imposed sentence, and did not do this by virtue of any statute, and therefore must have inherently had the power so to do. Each other jurisdiction has determined for itself

whether, according to the common law, custom and usage therein, the courts thereof have the power to suspend the pronouncing of a sentence (or to suspend the execution of a pronounced sentence), or have not such power. In each group will be found cases in which the power, if found to exist, or the lack of it, if found not to exist, is traced to the common law as practiced in the English courts; while other cases in each group will be found which affirm or deny the power in accordance with custom, usage or the practice of the common law, as found to exist in their jurisdictions. In the following cases it will be found that the court, for one reason or another, has denied that the court had power to suspend the pronouncing of sentence : *People* v. *Morrisette* (*N. Y. O. & T.*), *20 How. Pr. 118; People* v. *Allen* (*Ill., 1895*), *41 L. R. A. 473; People* v. *Blackburn, 6 Utah 347; People* v. *Brown, 54 Mich. 15; United States* v. *Wilson, 46 Fed. Rep. 748; Gray* v. *State, 107 Ind. 177; Ex parte Peterson* (*Idaho, 1911*), *113 Pac. Rep. 729; State* v. *Hilton* (*N. C., 1909*), *65 S. E. Rep. 1011; State* v. *Hockett, 108 S. W. Rep. 599; 129 Mo. App. 639.*

In the following cases the court has held that it had the power to suspend the pronouncing of a sentence : *People, ex rel. Forsythe,* v. *Court of Sessions, 141 N. Y. 291; 29 L. Ed. 107; 23 L. R. A. 356; State* v. *Buckley* (*N. H.*), *74 Atl. Rep. 875; Iowa* v. *Voss* (*Iowa, 1890*), *8 L. R. A. 768; People* v. *Mueller, 15 Chic. L. N. 364; Weaver* v. *People, 33 Mich. 297; In re Webb* (*Wis., 1895*), *27 L. R. A. 356; State* v. *Crook* (*N. C., 1894*), *29 L. R. A. 260; Weber* v. *Ohio* (*Ohio, 1898*), *41 L. R. A. 472; Green* v. *State* (*Ark., 1908*), *114 S. W. Rep. 477; Commonwealth* v. *Dowdican, 115 Mass. 136; Marks* v. *Wentworth, 85 N. E. Rep. 81; 199 Mass. 44* (*1908*) ; *Ex parte St. Hilaire, 64 Atl. Rep. 882; 101 Me. 522* (*1906*).

The following cases concern the power of a court to suspend the execution of an imposed sentence; some holding that it has the power, and others that it has not: *Ex parte Clendenning, 19 L. R. A.* (*N. S.*) *1041; Clifford* v. *Heller* (*Supreme Court, 1899*), *63 N. J. Law* (*34 Vr.*) *105* (at *p. 116*) ; *57 L. R. A. 312; People* v. *Cummings, 14 L. R. A. 285, notes; State* v. *Voss, supra; In re Webb, supra; Neal* v. *Georgia* (*Ga., 1898*), *42 L. R. A. 190; Weaver* v. *Ohio, supra; State* v. *Abbott* (*S. C.,*

*1911), 70 S. E. Rep. 6; Wall* v. *Jones (Ga., 1910), 69 S. E. Rep. 548; Ex parte Cornwall, 122 S. W. Rep. 666; 223 Mo. 259; State* v. *Smith (Ind., 1910), 90 N. E. Rep. 607; Tanner* v. *Wiggins, 45 So. Rep. 459; 54 Fla. 203 (1907).*

Since the cases as cited above which affirm the power are properly based upon a finding of the existence of such power in the court by virtue of the custom, usage and common law as administered in that court, the next inquiry is, what is the fact with respect to our own state?

From such inquiry as I have made, I find that an indefinite suspension of sentencing has been the custom in this jurisdiction beyond the memory of those now connected with the administration or practice of the criminal law in this state. Such references as are made to the matter in reported cases bear out the inference that such custom has been one of long existence in this jurisdiction. *State* v. *Addy, supra; State* v. *Henson, supra*—Mr. Justice Collins in dissenting opinion (at *p. 610*) ; *Blazier* v. *Keffer, supra; Clifford* v. *Heller, supra.*

The conclusion which I have therefore reached is that in the State of New Jersey if a defendant has pleaded *nolo contendere,* or guilty, or has been convicted upon trial, the court has the power, if the defendant does not object thereto, and therefore is assumed to assent thereto, to refrain from pronouncing a judgment or sentence, and may, at a subsequent time, hale the defendant before it, and impose the punishment in the same manner that it would have been justified in pronouncing it upon the very day when the case was first ripe for sentence.

It will be observed that I have said that this rule is only applicable in its full force where the defendant has not objected, or will be found to have assented; because I find no authorities as to the power of the court to suspend the sentencing in the face of an objection by the defendant.

Since, so far, as neither the counsel engaged nor have I been able to find any case in New Jersey in which the question has been squarely raised and decided, and since I find the custom to be one of ancient origin and constant practice, it may not be a waste of time to give a brief consideration to the propriety or impropriety of the custom.

The two points of view from which the matter must be considered are, of course, that of the state or public on one hand and that of the defendant on the other. Since the measure of the punishment to be inflicted in any given case (excepting some few of which murder in the first degree is a conspicuous example) is left entirely at the discretion of the court, it would seem that, from the public point of view, it must be held that the public rights are presumably protected by whatever the judge in his discretion does in this respect. It is for him to determine whether the defendant shall pay a fine within the limits fixed by the statute, or suffer some imprisonment, within limits similarly fixed. And it can well be argued from the standpoint of public policy that it is proper for the court, in those cases where it finds that the public interests will best be served by not presently imposing any sentence to thus deal with the subject.

Considerations of public policy may often properly induce a court to hold off inflicting punishment for such a time as that course seems discreet to the court. The power would seem to be analogous to the immunity that courts, in their discretion, may give an accomplice to aid the prosecution. *State* v. *Graham (Supreme Court, 1879), 41 N. J. Law (12 Vr.) 15;* and is similarly exercised where one equally guilty has pleaded guilty or *non vult,* and has aided the state in the trial of the others concerned in the commission of the crime.

From the defendant's standpoint, the only legitimate objection, it would seem to me, to the action of the court in refraining from presently inflicting punishment, would be the undesirability of remaining in the indeterminate position resulting from a suspension of the pronouncement of judgment. But is not this essentially a matter within his own control? Undoubtedly, any convicted defendant could compel the proper court, by *mandamus,* to pronounce judgment; and, in my view, if a court sought to postpone the sentencing, or suspend it, for any purpose or any period which would be clearly unreasonable, the defendant could fully protect his rights by objection which would, undoubtedly, in my view, result either in the trial court not attempting to exercise the jurisdiction in the face of objection, or in the supreme court holding that, in the face of an objection, the trial court acted im-

properly in unreasonably delaying the pronouncement of judg-- ment and subsequently pronouncing one.

As a general principle, I should say, that, either the successful or the defeated party in any litigated proceeding, civil or criminal, could move for judgment at any time when and after the matter was ripe for judgment.

But if the defendant acquiesces, or does not object, it is difficult to see how he can be said to be injured. It is necessary to remember that the defendant has been convicted; that the court has the power to inflict the full measure of punishment; that if a defendant, thus in peril of suffering the full penalty of the law, is not visited with it, many things may happen favorable to him; while nothing worse than his present plight can possibly happen. If a defendant thus circumstanced sees fit not to object, or to acquiesce, I do not see who else is concerned that can complain, nor how he can legitimately complain.

I feel quite sure that, under the criminal law, as administered in this state, where every right of the defendant is zealously guarded, and the state is held to have power to inflict punishment only when every step has been taken in exact accordance with legal procedure, there is no danger that a defendant will have any right violated, or be in any way oppressed, if the custom so long in vogue is continued.

I am inclined to say—although, of course, not to find, because it is not in issue—that the power thus to indefinitely suspend sentencing, which exists in the court, is not exercisable in the face of an objection by the defendant; that when exercised, in default of objection, and with either implied or actual acquiescence, it is a lawful exercise of power residing in the court, and cannot result in the release of a prisoner subsequently sentenced, and who applies by a writ of *habeas corpus* for that purpose.

The only doubt which remains to be dealt with was one not directly raised by the defendant in this case, but which has occurred to the court in the consideration thereof; and that is the effect of the probation laws upon this subject. In the laws of 1900, page 289, there will be found an act entitled "An act to provide for the appointment of probation officers and to

define their powers and duties." In the fourth section of this act it is provided

"in case the record of any person convicted of crime shall, in the judgment of the court so justify, it shall be lawful for the court in which the conviction is had instead of imposing the penalty provided by law for the offence, to suspend the imposition of the penalty and to order the person so convicted to be placed upon probation under the care of such probation officer for such time and upon such conditions as the court in its order shall determine."

The ninth section provides for sentencing upon violation of the conditions of probation, but provides that this cannot be done after a period of three years has elapsed from the date of original conviction. This act was repealed in 1906 (*P. L. ch. 74 p. 104*), and by chapter 75, page 104 (*P. L. 1906*) there is provision made for the appointment of probation officers and defining their powers and duties; and in the same year, by chapter 76, page 107, the provisions relating to placing persons on probation are re-enacted under the title of "An act relating to courts having criminal jurisdiction and regulating proceedings in criminal cases." Incidentally, I gather that it was considered that these last cited provisions were unconstitutional while they remained in an act relating to probation officers, rather than in an act which, by title, had reference to courts of criminal jurisdiction.

The question raised by the existence of this legislation is whether, in view of it, it should not be held that the court has not the power to indefinitely suspend sentencing, but is now restricted to placing the person on probation, suspending the imposition of the sentence in the meantime as provided in the act.

While I have not had time to consult the Illinois statute and to see in what respects it differs from ours, the court of appeals of Illinois, in the case of *People* v. *Barrett, 63 L. R. A. 82,* held that whatever the power was at common law theretofore, the enactment of their statute with respect to probation, or releasing on parole, made it improper thereafter to indefinitely suspend the imposition of a sentence except in cases where the defendant was placed under the jurisdiction of the board in question. I gave long and earnest consideration to the question

of whether I should not make a similar finding in this case; but I have finally reached the conclusion that it would be improper for me to do so. Finding, as I do, that from time immemorial, so far as our jurisdiction is concerned, it has been the common law as it obtained in this state to suspend indefinitely the imposition of sentence in cases where the court in its discretion thought best to do so, and the defendant did not object, or acquiesced, I do not find that this legislative act has taken away that power. It certainly has not attempted to do so by any direct language. The defendant in each instance where the court indicated its intention not to impose a sentence immediately but to postpone the same, might object, as I have above suggested, either to the suspension of the sentencing indefinitely, or to doing so unless the defendant was placed on probation—and if the court, over his objection, then indefinitely suspended sentencing and subsequently sentenced, I think it would be error. But I do not find that this legislation has deprived the court of its power where the defendant has not objected, and has impliedly or actually acquiesced, and that the court has the power under those circumstances, to postpone the imposition of a sentence and subsequently to impose sentence.

Such is the decision of the supreme court of New York. *People* v. *Flynn, 106 N. Y. Sup. 925; 55 Misc. Rep. (New York Supreme Court, 1907) 639.*

Having thus reached the conclusion that the judgment in this case was not invalid because I find that it was by a competent tribunal having criminal jurisdiction, which had jurisdiction of the person, and imposed that judgment within the terms of the law, I have discharged all the duty which it is proper for me to assume under a writ of *habeas corpus.*

If there was error of any sort committed by the court in imposing this sentence—if there was abuse of discretion amounting to legal error—that is correctible by writ of error, and is clearly not reviewable under a writ of *habeas corpus.*

The order will be that the defendant will be remanded to the custody of her present custodian.