HENRY J. SCHIRESON, PROSECUTOR, v. STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY AND EARL S. HALLINGER, M.D., RESPONDENTS.

Argued October 6, 1942—Decided November 19, 1942.

Before Justices CASE, DONGES and COLIE.

For the prosecutor, *Samuel P. Orlando.*

For the respondents, *David T. Wilentz,* Attorney-General, and *Joseph A. Murphy.*

The opinion of the court was delivered by

CASE, J. Prosecutor was a duly licensed practitioner of medicine in the State of New Jersey. On June 9th, 1939, he was indicted by a federal grand jury upon three counts, namely, (1) unlawfully concealing assets from a trustee in

bankruptcy, (2) making false oath in bankruptcy proceedings, (3) perjury. On September 29th, 1941, he entered a plea of *nolo contendere* as to Counts 1 and 2 and of *non vult* as to Count 3, the same plea, in our understanding, as variously expressed in the first and the third person, respectively. A judgment and commitment was entered as follows:

"Ordered and adjudged that the defendant, having been found guilty of said offenses, is hereby committed to the custody of the Attorney-General for imprisonment in an institution of the jail type to be designated by the Attorney-General or his authorized representative for the period of one year and one day on each count as to Counts 1 and 2;

"One year and one day on Count 3 and to pay to the United States a fine of $500. Imprisonment on all three counts to run concurrently."

At the times hereinafter mentioned prosecutor was imprisoned at the federal penitentiary at Lewisburg, Pennsylvania, on that commitment.

*R. S.* 45:9-16 provides as follows with respect to the power of the State Board of Medical Examiners to revoke a license to practice medicine or surgery:

"The board may refuse to grant or may suspend or revoke a license or the registration of a certificate or diploma to practice medicine and surgery filed in the office of any county clerk in this State under any act of the Legislature, upon proof to the satisfaction of the board that the holder of such license (a) has been adjudicated insane, or (b) habitually uses drugs or intoxicants, or (c) has practiced criminal abortion, or been convicted of the crime of criminal abortion, or has been convicted of crime involving moral turpitude, or (d) has advertised fraudulently, (e) becomes employed by any physician, surgeon, homeopath, eclectic, osteopath, chiropractor, or doctor who advertises fraudulently, or (f) shall have presented to the board any diploma, license or certificate that shall have been illegally obtained or shall have been signed or issued unlawfully or under fraudulent representations, or obtains or shall have obtained a license to practice in this State through fraud of any kind, or (g) has been guilty of employing unlicensed persons to perform work

which, under this chapter (45:9-1, *et seq.*) can legally be done only by persons licensed to practice medicine in this State, or (h) has been convicted of a violation of any Federal or State law relating to narcotic drugs. Before any license, or registration of a certificate or diploma to practice medicine or surgery filed in the office of any county clerk of this State under any act of the Legislature, shall be suspended or revoked, except in the case of convictions of criminal abortions or convictions of a crime involving moral turpitude or convictions of violations of any Federal or State law relating to narcotic drugs, the accused person shall be furnished with a copy of the complaint and be given a hearing before said board in person or by attorney  *  *  *."

Acting upon a complaint which charged that prosecutor had been convicted of crimes involving moral turpitude, namely, the crimes above enumerated, the State Board of Medical Examiners, having power (*R. S.* 45:9-2) to issue subpœnas and administer oaths, gave notice in writing to prosecutor that on February 18th, 1942, in the City of Trenton, it would hold a hearing on the said complaint and would then consider the suspension or revocation of prosecutor's license pursuant to the statute and that prosecutor might appear and make defense either in person or by attorney or both, with witnesses, if he so desired. Prosecutor received that notice with a copy of the complaint on or about January 23d, 1942. On his request, made through his attorney, the State Board postponed the hearing from February 18th, 1942, to March 18th, 1942, and again from March 18th, 1942, to April 15th, 1942. At the time of making the latter adjournment the Board announced that it would grant no further adjournments. Accordingly, and notwithstanding a request on prosecutor's behalf for a further continuance, the Board proceeded, on April 15th, without the personal presence of prosecutor, to receive the federal court record of the conviction in evidence and thereupon to revoke prosecutor's license to practice medicine and surgery. It is now urged on prosecutor's behalf that the revocation of his license was illegal because (1) the statute was unconstitutional in that it served to deprive him of liberty and property without due process

and that assuming validity of the statute the course followed by the State Board violated the same constitutional safeguard, (2) the resolution of revocation does not ground in legal evidence and (3) the refusal to grant further adjournment was capricious and therefore illegal.

The essence of the prosecutor's case is that the possession of his license was a property right and that the refusal of the Board of Medical Examiners to continue the hearing of the charge against him until he was released from jail deprived him of the opportunity to defend and therefore was not due process; and ancillary to this is the contention that the record of criminal proceedings did not disclose an adjudication or a plea that he was guilty of the offenses for which he was indicted and that therefore he could not be subjected to the revocation of his license except upon proof of guilt produced before the State Board on original charges of unlawful concealment, false swearing, perjury, or whatever offense might be laid against him.

It is not denied that the crimes for which he was sentenced involved moral turpitude. The State Board was authorized to proceed upon proof, not that the prosecutor was guilty of the named crimes, but that he had been convicted of them; and it is not denied that the court record of the indictment, the pleas, the conviction and sentence, in fact the whole pertinent record, was put in evidence before the board. Prosecutor had a legal claim to his license. We need not, however, determine whether his authority to practice was a privilege or a right or, if a right, whether just that or, more specifically, a property right. By whatever name, it was subject to the paramount right of government to protect the general health of the members of society—the police power. It was for the legislature to determine, within reasonable limits, what the tests of moral character in a physician should be. The circumstance that the prosecutor had already been licensed gave him no immunity against such legislation. *Lawrence* v. *Briry* (*Mass.*), 132 *N. E. Rep.* 174. He had no vested right to practice after he had been found to have qualities inconsistent with good moral character. Character, as well as knowledge and skill, should be resident in one who would

practice the art of healing and thus have intimate responsibility for the health and lives of human beings; and it is a reasonable exercise of legislative power to determine that a person who has committed a crime of moral turpitude is not such a one as should be permitted to practice medicine or surgery. It may be said of the practice of medicine as Mr. Justice Cardozo said of the practice of law: "Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards." *In re Rouss*, 221 *N. Y.* 81; 116 *N. E. Rep.* 782. The legislature of a state may enact that one who has been convicted of crime shall no longer practice medicine. *Hawker* v. *State*, 170 *U. S.* 189; 42 *L. Ed.* 1002.

Prosecutor would draw a technical distinction between a conviction and that congeries of events which terminated in his being lawfully sentenced and in his submitting to the imprisonment which the sentence imposed; but there can be no well grounded dissent from the proposition that so far as the state was concerned there was a conviction. True, there was no jury verdict of guilt and there was not a technical plea of "guilty," and if prosecutor had been sued in a civil action he would have had the benefit, in his defense, of such rules as hinge upon that distinction. But the proceeding before the board was not such an action. In *State* v. *Henson*, 66 *N. J. L.* 601, 608, our Court of Errors and Appeals said: "The plea of *nolo contendere* has the same effect as a plea of guilty, so far as regards the proceedings on the indictment. It is a confession only for the purposes of the criminal prosecution, and does not bind the defendant in a civil suit for the same wrong." We believe that the distinction there drawn is between a criminal proceeding with its outbranches and a civil proceeding, and that the situation created by the pertinent statute and the status of the criminal court record is not within the purview of that decision or of other decisions and text book statements to like effect. Our view that the control over the granting and revoking of licenses to practice is the exercise by the state, through its authorized agency,

of its police powers leads to the further finding that the revocation of prosecutor's license was as completely a governmental act as was the judgment of conviction and sentence. The fact that a witness has pleaded *non vult* to an indictment for crime has been held by our courts provable as affecting his credibility as a witness. *Hill* v. *Maxwell, 77 N. J. L.* 766. Chancellor Walker, in the Chancery case of *Johnson* v. *Johnson, 78 N. J. Eq. 507* (at *p.* 511), quoted with approval from 12 *Cyc.* 354:

"A plea of *nolo contendere,* which is still allowed in some jurisdictions, is an implied confession of the crime charged, and as regards the case in which it is entered, is equivalent to a plea of guilty, except that it gives to the accused the advantage of not being estopped to deny his guilt in a civil action based upon the same facts as he would be upon a plea of guilty."

So far as the state is concerned the judgment of conviction follows as well a plea of *nolo contendere* as a plea of guilty. *Commonwealth* v. *Horton, 9 Pick.* 206. A plea of *nolo contendere* is an implied confession of the offense charged. The judgment of conviction follows that plea as well as a plea of guilty. *State* v. *Herlihy (Me.), 66 Atl. Rep.* 643. In our opinion the proceedings in the federal court constituted a conviction within the meaning of the statute.

But it is said that prosecutor was entitled, notwithstanding his conviction, to have his original guilt proved before the board by witnesses and exhibits as though there had been no conviction and as though the charge before the board was that he was guilty of the alleged offenses and not that he had been convicted of them. That clearly was not the requirement or the intent of the statute and was not made necessary by any provision of the federal or of our state constitution. It would be a strange eventuality for the prosecutor after his guilt had been so plainly established to be held innocent with respect to the practice of his profession. This proceeding is merely one to give effect to a provision of the statute relating to the practice of medicine and surgery which says that the board may revoke upon conviction of a crime of the desig-

nated class. *Cf. Commonwealth* v. *Jackson,* 248 *Pa.* 530; 94 *Atl. Rep.* 233. "The thought which runs through these (viz., the cited) cases and others of similar import which might be cited, is that such legislation is not to be regarded as a mere imposition of additional penalty but as prescribing the qualifications for the duties to be discharged and the position to be filled, and naming what is deemed to be and what is in fact appropriate evidence of such qualifications." *Hawker* v. *State, supra.* The only issue before the State Board was whether prosecutor had been convicted of a crime involving moral turpitude; he had been so convicted and that fact was proved from the court records—competent evidence for that purpose. The question of guilt or innocence, as such, was not in issue; prosecutor had had his day in court on that.

It is said, also, that the statute is unconstitutional in that it does not require that the physician be notified of the proceedings or be given an opportunity to be heard and that the Board acted unconstitutionally because its proceedings found him in such predicament, because of his imprisonment, that he could not attend. Be it observed, however, that while the statute does not, where the cause for suspension or revocation is the conviction of a crime, require the "hearing"—really a trial—which it directs shall be accorded where the cause is the commission of an offense for which there has been no prior conviction, nevertheless it does not provide that no notice shall be given of the purpose of the board to sit in disciplinary session, and as a matter of fact notice was given of the session, and given in such fashion that prosecutor had full advance knowledge thereof, and indeed appeared by counsel to the extent of obtaining two adjournments. It is not a condition of due process that the defendant shall be, or shall be able to be, physically present at the hearing. The board's refusal to grant further adjournment was not capricious. The resolution of revocation contained an ample statement of the evidence upon which the revocation was based.

We conclude that neither the statute nor the procedure was unconstitutional in the respects complained of, that the finding of the board was grounded in legal evidence and that the

refusal to grant further adjournment was neither capricious nor otherwise illegal. It is unnecessary to remark upon other matters presented in the prosecutor's brief.

The order under review will be affirmed, with costs.