150 So.2d 281 (1963)
Joseph A. PEEL, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 3093.
District Court of Appeal of Florida. Second District.
February 1, 1963.
Rehearing Denied March 5, 1963.
*282 Harry W. Fogle, of Fogle, Wilson & Shingler, St. Petersburg, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee, Robert R. Crittenden, Asst. Atty. Gen., Lakeland, Phil D. O'Connell, State Atty., West Palm Beach, Eugene P. Spellman, Miami, for appellee.
ALLEN, Acting Chief Judge.
Joseph A. Peel, Jr., appeals from a sentence to life imprisonment given him after a nolo contendere plea under an indictment returned by the Palm Beach County Grand Jury which accused him of being an accessory before the fact to first degree murder.
The indictment filed November 23, 1960, charged that Floyd A. Holzapfel effected the death of one Marjorie M. Chillingworth by drowning her on June 15, 1955, and that, at divers times between May 1, 1955, and June 15, 1955, the defendant, Joseph A. Peel, Jr., unlawfully counseled, hired, procured and commanded the said Floyd A. Holzapfel to do and commit the aforesaid felony.
On the same date another indictment was filed charging Holzapfel with the crime of murder in the first degree in the killing of Judge C.E. Chillingworth, and charging the defendant Peel with being an accessory before the fact to the commission of that murder.
The Circuit Court of the 15th Judicial Circuit transferred the venue of the cause to the Circuit Court of the 9th Judicial Circuit in and for St. Lucie County, where defendant Peel was tried as being an accessory to the murder of Judge Chillingworth, who was the husband of Marjorie M. Chillingworth. Peel was convicted by the jury with a recommendation of mercy and given a mandatory life sentence by the trial judge. Subsequently, after an unsuccessful attempt to secure an impartial jury for the instant case in St. Lucie County, an order was entered transferring this cause to the Circuit Court of the 10th Judicial Circuit in and for Polk County, Florida.
On November 29, 1961, after two days of hearing which were chiefly taken up in the selection of a jury, at a conference with the Honorable D.C. Smith, Judge of the 9th Judicial Circuit, who was the trial judge in the previous Peel case for the murder of Judge Chillingworth, and who had been assigned to the 10th Circuit for the instant case, the appellant voluntarily withdrew his plea of not guilty and entered a plea of nolo contendere to the indictment. The prosecuting attorney thereupon offered into evidence with the acquiescence of appellant's counsel the transcript of testimony constituting the prosecution's evidence against the appellant taken in the trial of Peel in the Judge Chillingworth case. The trial court accepted the appellant's plea of nolo contendere and adjudged him guilty of the crime charged in the indictment, sentencing him to life imprisonment in the Florida State Prison.
Upon the appellant's motion for new trial being denied on December 4, 1961, he filed on February 22, 1962, his notice of appeal herein.
The appellant states in his brief, and argues, the following questions:
"1. Is a defendant charged with being an accessory before the fact to first degree murder entitled to a bill of particulars as to the crime which is alleged to have occurred five and one-half years before the finding of the indictment?
"2. Was it error for the court to deny the defendant's motion for a mistrial made in this cause based upon the defendant's being taken before the panel of prospective jurors under shackles and bonds, to-wit, handcuffs?
"3. Was it error for the court to deny the defendant's motion for a continuance in order to enable the defendant to obtain the testimony of Peggy Holzapfel and Charles Rothschild and to deny the issuance of a commission for *283 the taking of the testimony of the said witnesses by interrogatories?
"4. Was it error for the court to deny the defendant's motion to dismiss this prosecution based upon the ground that a speedy and public trial had been denied to him?
"5. Was it error for the court to deny the defendant's motion to dismiss this prosecution based upon the ground that the defendant was twice being placed in jeopardy for the same offense?
"6. Can the court accept a plea of nolo contendere to a capital offense?
"7. Can the court accept a plea of nolo contendere to a capital offense upon the express condition that a life sentence be imposed upon the defendant?"
The State adduces the following additional point:
"Whether an accused, after voluntarily entering a plea of nolo contendere to a criminal charge, being adjudicated guilty and sentenced thereon, may raise questions on appeal concerning matters other than the sufficiency of the accusatory writ."
We shall affirm the lower court in this case.
Because of the effect that a nolo contendere plea has on the other points stated by the appellant, we must discuss its acceptability by the courts in the first instance. We shall then proceed to discuss in turn appellee's additional point and then appellant's sixth and seventh points before alluding to appellant's other five points, the determination of which depends on our conclusions regarding the matters first considered.
The questions involving the plea of nolo contendere are ones of first impression in Florida. Counsel have cited no Florida cases nor have we found by independent research any that answer the points directly. However, three decisions by our Supreme Court involved cases in which nolo contendere pleas had been filed but in which the court did not discuss the questions raised in the instant case.
Before we survey the decisions of other jurisdictions for the historical development of the plea of nolo contendere, we will discuss the three Florida cases in which the plea was used.
In Pensacola Lodge No. 497, B.P.O.E. v. State, 74 Fla. 498, 77 So. 613, it was stated:
"Where a plea of nolo contendere is accepted it is not necessary in passing sentence for the court to adjudge the party to be guilty, for that follows as a legal inference from the implied confession in the plea; but the court should adjudge that the defendant is convicted of the offense charged, and the sentence which follows should impose the penalty as provided by law. * * *"
In Fox v. State, 112 Fla. 104, 150 So. 228, the defendant filed a plea of nolo contendere which he subsequently moved to withdraw. The motion to withdraw was denied, and an appeal was taken by the defendant. The Supreme Court, in its opinion, said:
"To an information charging a felony, the accused, apparently without understanding its import, offered a plea of nolo contendere, upon which a judgment of conviction and sentence to the state prison was rendered. It does not appear that the accused was represented by counsel when the plea was filed. A motion to vacate the judgment and for leave to withdraw the plea of nolo contendere was supported by an affidavit of the accused that he had `never heard before of the word nolo contendere and did not know or understand its meaning, but was under the impression and believed that when he entered a plea that he was entering a *284 plea of not guilty and that he did not intend to plead guilty,' but is innocent. The motion was denied. This was harmful error."
In the case of State v. Febre, 156 Fla. 149, 23 So.2d 270, the defendant Febre was charged with assault with intent to commit murder in the first degree and was convicted by the criminal court of record of aggravated assault. Both the State and the defendant appealed to the Supreme Court. A motion was made by the defendant to dismiss the appeal of the State which was granted. The Supreme Court, in its opinion, said:
"An information charging assault with intent to commit murder in the first degree was filed against Edmundo Febre by the County Solicitor of Hillsborough County, Florida, and upon arraignment thereto in the Criminal Court of Record he entered a plea of nolo contendere. The Honorable L.A. Grayson, Judge, thereupon heard testimony and entered a judgment of conviction of the crime of aggravated assault and sentenced Febre to serve one year at hard labor in the County Jail of Hillsborough County, Florida.
* * * * * *
"Counsel for Edmundo Febre moved this court to dismiss the appeal taken by the State of Florida in the case at bar and several reasons are submitted therefor. While other grounds of the motion to dismiss may have merit, we deem it necessary only to consider ground No. 2, which is, viz.:
"`The transcript of record filed in this Court shows on its face that appellee was adjudged guilty by the trial court of a misdemeanor, to-wit, aggravated assault, and was given a legal sentence therefor within the statute, to-wit, twelve months imprisonment in the County jail of Hillsborough County, Florida; that therefore the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, has final appellate jurisdiction of said conviction and the same cannot be reviewed on direct appeal to this Court. See Art. V, Sec. 5, Constitution of Florida; Sec. 287, Criminal Procedure Act, [F.S.A. § 924.08]; Byrd v. State, 146 Fla. 686, 1 So.2d 624.'
"The crime of assault with intent to commit murder in the first degree, as charged in the information, embraced lesser criminal offenses. The trial court accepted the plea of nolo contendere and then proceeded to hear testimony and to ascertain therefrom the degree of guilt for which the appellee should stand convicted. It was the conclusion of the trial court, after hearing all the evidence offered by the respective parties and argument of counsel, that the appellee was guilty of the crime of aggravated assault and so held, and entered judgment against the appellee accordingly. The effect of this adjudication was to acquit the appellee of all greater offenses charged in the information. See State ex rel. Landis v. Lewis, 118 Fla. 910, 160 So. 485; Haddock v. State, 141 Fla. 132, 192 So. 802.
"Considerable space in the brief of appellant (the State of Florida) is devoted to the question of whether the appellee (Edmundo Febre), under the plea of nolo contendere, by the trial court should have been adjudged guilty of an assault with intent to commit murder in the first degree, or an assault with intent to commit murder in the second degree. Sections 784.06, 909.10, 909.11, 919.14, 919.16, Fla.Stats. 1941, F.S.A.; Pensacola Lodge No. 497, B.P.O.E. v. State, 74 Fla. 498, 77 So. 613, and citations from other jurisdictions, are cited and relied upon to sustain the contention. These authorities have been carefully examined."
The Court concluded that since the trial judge had received evidence and reached a determination that the defendant was *285 guilty of aggravated assault, a misdemeanor, the State of Florida was bound by such findings of fact the same as if they had been arrived at by jury verdict. Jurisdiction over appeals in misdemeanor cases being in the circuit court, the appeal was dismissed.
It would appear that if a plea of nolo contendere had not been proper in the foregoing Florida cases, our Supreme Court would have commented on its impropriety as to the particular case. Nor can we ignore the implied recognition given said plea by the Florida Legislature.
Section 909.02, Florida Statutes, F.S.A., provides:
"909.02 Certain pleas abolished; motion to quash substituted. Pleas to an indictment or information, other than pleas of nolo contendere, guilty, or not guilty, are abolished.
"All defenses heretofore available to a defendant by plea, other than pleas of nolo contendere and not guilty, shall be taken only by motion to quash the indictment or information, whether the same relate to matters of form or substance, former acquittal, former jeopardy, or any other defense which heretofore was raised by plea."
In 152 A.L.R. 253, there appears an excellent annotation upon the plea of nolo contendere or non vult contendere. The annotator, in the introduction on page 254, states:
"a. History of plea.
"Recent years have brought about the renaissance of a plea in criminal proceedings which, already half forgotten, was on its way to complete oblivion. This has been particularly evident in the Federal courts, where, according to some authors, thousands of defendants have pleaded nolo contendere in the past few years to indictments and criminal informations charging them with violating the anti-trust laws. This phenomenon has served to focus attention upon this plea, and it may be expected that because of the attractiveness of certain of its features for the defendant it will grow in frequency and importance, once attorneys have discovered a willingness on the part of the courts to accept a plea under proper circumstances.
* * * * * *
"It is an interesting phenomenon that all discussions of the nature of the plea of nolo contendere go back in their last analysis to one and the same source, namely a passage in the book of an English author published early in the nineteenth century. [Hawkins, A treatise of the Pleas of the Crown, 8th ed, c 31, p 466]. This famous passage reads: `An implied confession is where a defendant, in a case not capital, doth not directly own himself guilty, but in a manner admits it by yielding to the king's mercy, and desiring to submit to a small fine: in which case, if the court think fit to accept of such submission, and make an entry that the defendant posuit se in gratiam regis, without putting him to a direct confession, or plea (which in such cases seems to be left to discretion), the defendant shall not be estopped to plead not guilty to an action for the same fact, as he shall be where the entry is good cognovit indictamentum.'
* * * * * *
"It has been held in a majority of cases that a court is not, by accepting a plea of nolo contendere prevented from sentencing the accused to imprisonment. This is the generally accepted rule in the Federal courts. It has been definitely settled by the decision in Hudson v. United States, [(1926) 272 U.S. 451, 71 L ed 347, 47 S.Ct. 127)] which, being the leading case on this point, expressly repudiated the contrary doctrine as expressed in Tucker v. United States, [(1912; CCA 7th) 196 F 260, 41 LRA (N.S.) 70]. In the Hudson Case, the *286 defendants were indicted for using the mails to defraud, a felony punishable by fine or imprisonment or both, and after pleading nolo contendere, each defendant was sentenced to imprisonment. Holding that a Federal court could, after accepting a plea of nolo contendere, impose a prison sentence, the Supreme Court rejected the contention that the statement in Hawkins of `desiring to submit to a small fine' expressed a condition binding on the tribunal and preventing it from imposing a prison sentence, and, declaring that this statement was illustrative only, said: `We think it clear, therefore, that the contention now pressed upon us not only fails of support in judicial decisions, other than those of the seventh circuit already noticed, but its historical background is too meager and inconclusive to be persuasive in leading us to adopt the limitation as one recognized by the common law. Undoubtedly a court may, in its discretion, mitigate the punishment on a plea of nolo contendere, and feel constrained to do so whenever the plea is accepted with the understanding that only a fine is to be imposed. But such a restriction made mandatory upon the court by positive rule of law would only hamper its discretion and curtail the utility of the plea.'
"Prior to the decision in the Hudson Case, a number of lower Federal courts had held that a sentence of imprisonment could be imposed upon a plea of nolo contendere, and since this decision this rule has been consistently followed in the Federal courts.
"In the state courts the precise question has rarely been raised expressly; but where this has been the case the better considered cases have followed the federal rule. In a majority of jurisdictions the courts have ordered imprisonment on pleas of nolo contendere without discussing the problem." [Fox v. State, 1933, 112 Fla. 104, 150 So. 228, and cases from New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island and Texas.]
The annotator, in 152 A.L.R. 273, states the effect of the plea on the case in which it is made as follows:
"What is the legal effect of the plea of nolo contendere after it has been offered by the defendant and accepted by the court in respect to the case in which it has been interposed? The answer to this question as given by all the decisions in point is: The plea of nolo contendere when accepted by the court, becomes an implied confession of guilt, and for the purposes of the case only, equivalent to a plea of guilty."
There are a number of cases cited supporting this theory from the Federal courts, Alabama, Colorado, Florida, (Pensacola Lodge v. State, supra,) Maine, Massachusetts, Missouri, New Jersey, Pennsylvania, Texas, West Virginia and Wisconsin.
Vol. 2, Standard Encyclopaedia of Procedure, p. 905, in discussing nolo contendere, states:
"A plea of nolo contendere is an implied confession of the offense charged, and has been said to be a mild form of pleading guilty."
The case of Buck v. Com., 107 Pa. 486, is cited with this notation:
"While not technically a plea of guilty, it is such in substance. Com. v. Holstine, 132 Pa. 357, 19 Atl. 273."
Continuing on page 905, under subsection b. Distinguished from Plea of Guilty, is the following:
"There is a difference between the two pleas, guilty and nolo contendere; the former is an express confession of guilt and may be used against the defendant in a civil suit, while the latter is an implied confession of guilt only, and cannot be used against the defendant as an admission in any civil suit for the same act. * * *"
*287 Then in subsection d. Advantages of Plea:
"The advantages which may attend a plea of nolo contendere are that, when accompanied by a protestation of the defendant's innocence, it will not conclude him in a civil action from contesting the facts charged in the accusation. And similarly the defendant is not estopped to plead not guilty to a criminal action for the same facts, as he would be upon a plea of guilty. And again another advantage of the plea of nolo contendere was, under the ancient practice, that the party might be admitted to prove son assault upon the prosecutor, in mitigation of the fine."
On page 906, in subsection g. Effect of Plea, it is stated:
"A plea of nolo contendere, when accepted by the court, is, in its effect upon the case, equivalent to a plea of guilty. It is not necessary or proper that the court should adjudge the defendant to be guilty, for that follows as a legal inference from the implied confession; but the court proceeds thereupon to pass the sentence of the law, as upon a plea of guilty."
Vol. 4, Wharton's Criminal Procedure, p. 772, § 1903, defines the plea of nolo contendere as follows:
"The plea of nolo contendere admits the facts for the purpose of the pending prosecution and to that extent has the same effect as a plea of guilty, but unlike a plea of guilty it cannot be used against the defendant, in a civil suit as an admission of the facts charged in the indictment when accompanied by a protestation of the defendant's innocence.
"The plea of nolo contendere cannot be put in without leave of court. It is discretionary with the court to receive such a plea, and usually it is allowed, if at all, only in inferior misdemeanors. This plea is ordinarily not permitted in a capital case, and in some jurisdictions is not permitted in any case."
Black's Law Dictionary, 3d Ed., states, under the heading "Nolo Contendere":
"Nolo Contendere. Lat. I will not contest it. The name of a plea in a criminal action, having the same legal effect as a plea of guilty, so far as regards all proceedings on the indictment, and on which the defendant may be sentenced. U.S. v. Hartwell, 3 Cliff. 221, Fed.Cas.No. 15,318. Like a demurrer this plea admits, for the purposes of the case, all the facts which are well pleaded, but is not to be used as an admission elsewhere. Com. v. Tilton, 8 Metc. (Mass.) 232. Not available as an estoppel in a civil action. * * *"
"Non Vult Contendere" is defined as follows:
"Non Vult Contendere. Lat. He (the defendant in a criminal case) will not contest it. A plea legally equivalent to that of guilty, being a variation of the form `nolo contendere,' (q.v.,) and sometimes abbreviated `non vult.'"
Some of the confusion in the use of the plea of nolo contendere is illustrated by two Federal Court decisions. In Tucker v. United States, 196 F. 260, 41 L.R.A.,N.S., 70 (C.C.A. 7th, 1912), the Court held, on a plea of nolo contendere, that imprisonment could not be inflicted but only a fine. The Court also held, however, that when such plea is accepted by the court it becomes an implied confession of guilt and for the purposes of that case only is equivalent to a plea of guilty, though distinguishable from such plea in that it could not be used against the defendant as an admission in any civil suit for the same act. In the case of Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347, (1926), decided some 14 years after the Tucker case, Mr. Justice Stone delivered the opinion of the Supreme Court affirming a district court decision sentencing the accused to imprisonment for conspiracy. By its decision the Court held that a plea of nolo contendere is an admission of guilt for the purposes *288 of the case and that the court is not, by merely accepting a plea of nolo contendere, prevented from sentencing the accused to imprisonment.
In his opinion, Mr. Justice Stone reviewed the historical development of nolo contendere as follows:
"The plea of nolo contendere was known to the common law, and is referred to, although not by name, by a modern English text-writer. See Archbold's Pleading, Evidence and Practice in Criminal Cases (26th Ed., 1922) 379. But no example of its use in the English courts has been found since the case of Queen [Reg.] v. Templeman (decided in 1702), 1 Salk. 55 [91 Eng. Reprint, 54], where, although a fine was imposed, the question now under consideration was neither decided nor discussed.
"The view of the court in the Tucker Case, that a prison sentence may not be imposed on the plea of nolo contendere, rests upon no more substantial basis than a possibly ambiguous phrase in a passage from Hawkins, Pleas of the Crown (8th Ed.) book 2, c. 31, p. 466. The author prefaces the chapter, `Of Confessions and Demurrer,' with the remark: `And now I am to consider what is to be done to a prisoner upon his confession, which may be either express or implied.' In sections 1 and 2, he points out that a confession of guilt  `carries with it so strong a presumption of guilt that an entry on record, "quod cognovit indictamentum," etc., in an indictment of trespass, estops the defendant to plead "not guilty" to an action brought afterwards against him for the same matter.' He then says:
"`Sec. 3. An implied confession is where a defendant, in a case not capital, doth not directly own himself guilty, but in a manner admits it by yielding to the king's mercy, and desiring to submit to a small fine: in which case, if the court think fit to accept of such submission, and make an entry that the defendant posuit se in gratiam regis, without putting him to a direct confession, or plea (which in such cases seems to be left to discretion), the defendant shall not be estopped to plead not guilty to an action for the same fact, as he shall be where the entry is quod cognovit indictamentum.'
"This passage appears in all the earlier editions of Hawkins. It has been handed down from generation to generation of text-writers in substantially the same form with occasional glosses, but researches rarely went further. Similarly judicial study of the history of the plea halts with Hawkins.
* * * * * *
"But, even if we regard the implied confession as a petition which in Hawkins' time had to be accepted as tendered, in modern practice it has been transformed into the formal plea of nolo contendere. Like the implied confession, this plea does not create an estopppel; but, like the plea of guilty, it is an admission of guilt for the purposes of the case. * * *
* * * * * *
"We think it clear, therefore, that the contention now pressed upon us not only fails of support in judicial decisions other than those of the seventh circuit already noticed, but its historical background is too meager and inconclusive to be persuasive in leading us to adopt the limitation as one recognized by the common law.
"Undoubtedly a court may, in its discretion, mitigate the punishment on a plea of nolo contendere and feel constrained to do so whenever the plea is accepted with the understanding that only a fine is to be imposed. But such a restriction made mandatory upon the court by positive rule of *289 law would only hamper its discretion and curtail the utility of the plea."
In Farnsworth v. Sanford (D.C. 1940), 33 F. Supp. 400; 5 Cir., 115 F.2d 375, writ of certiorari denied in (1941) 313 U.S. 586, 61 S.Ct. 1109, 85 L.Ed. 1541, the defendant, after pleading nolo contendere to an espionage indictment, sought his release by filing a petition for writ of habeas corpus. The Court rejected the defendant's contention that no valid plea of nolo contendere could be made where the offense charged was punishable by a mandatory penalty of imprisonment.
In Dillon v. United States (8 Cir., 1940), 113 F.2d 334, cert. den. 311 U.S. 689, 61 S.Ct. 71, 72, 85 L.Ed. 445, 446, a case in which the defendants pleaded nolo contendere to an indictment for mail fraud, the Court said: "* * * It is settled that the pleas of nolo contendere were confessions of guilt for the purpose of the case, and sentence of both imprisonment and fine could be imposed upon such plea."
In State v. Thomas, 236 N.C. 196, 72 S.E.2d 525, the Supreme Court of North Carolina said:
"Moreover, it is apparent from the record that all through the proceeding there is confusion as to the effect of a plea of nolo contendere in the case in which it was entered, and its consequences outside the particular case. The text writers and annotators, interpreting decisions of the courts of the land, say (1) that `all the decisions are in agreement that the plea of nolo contendere cannot be entered by a defendant as a matter of right, but is pleadable only by leave of the court,'  that `its acceptance by the court is entirely a matter of grace'. Ann. 152 A.L.R. 253 at page 267; citing among other cases State v. Burnett, 174 N.C. 796, 93 S.E. 473, L.R.A. 1918A, 955; State v. Parker, 220 N.C. 416, 17 S.E.2d 475; (2) that in all decisions in point the legal effect of the plea of nolo contendere, after it has been offered by the defendant and accepted by the court, in respect to the case in which it is interposed, is that it becomes an implied confession of guilt, and for the purposes of the case only, equivalent to a plea of guilty. * * *
* * * * * *
"In State v. Burnett, supra, it is said: `A plea of nolo contendere * * is equivalent to a plea of guilty in so far as it gives the court the power to punish. * * * The only advantage in a plea of nolo contendere gained by the defendant is that it gives him the advantage of not being estopped to deny his guilt in civil action based upon the same facts. Upon a plea of guilty, entered of record, the defendant would be estopped to deny his guilt, if sued in a civil proceeding.'"
In the case of Kravis v. Hock, 136 N.J.L. 161, 54 A.2d 778, it is stated:
"We do, however, agree with the conclusion of the Supreme Court that by appellant's plea of nolle contendere, followed by sentence and judgment, for the purpose of the Alcoholic Beverage Control statute he admitted his guilt and in so doing was, within the meaning of the statute, convicted of the crime charged. This not because the decision in Schireson v. State Board does not apply but because we are of the opinion that decision should be expressly reversed.
"The plea of nolle contendere has the same effect as a plea of guilty, so far as regards the proceedings on the indictment and the authorities in this state show that upon the acceptance of this plea the court is unrestricted by law with respect to the sentence which it may impose within the limits fixed by the statute for the punishment of the specific offense. State v. Henson, 66 N.J.L. 601, 608, 50 A. 468, 616; State v. Osborne, 79 N.J. *290 Eq. 430, 436, 82 A. 424. In this particular there is no distinction between a plea of nolle contendere, a plea of guilty, or a conviction after trial; although it is not necessary or proper that the court should adjudge the party to be guilty, but sentence should or can be imposed forthwith. State v. Osborne, supra, 79 N.J. Eq. at page 436, 443, 82 A. 424."
In the case of Ellsworth v. State, 258 Wis. 636, 46 N.W.2d 746, it is stated:
"Defendant now asserts that the trial court was in error in adjudging the plaintiff in error guilty on his plea of nolo contendere `when the trial court did not examine the information and the state did not introduce any evidence to substantiate the alleged larceny.' Defendant's plea is a waiver of proof.
"The record shows that the court knew the contents of the information as it stated: `You are entering a plea of nolo contendere to count No. 1 of the information, which charges the larceny of one suit of clothes alleged to have been stolen from Lohse's Exclusive Tailor Shop at Neenah?' This was answered affirmatively by defendant's counsel.
"The plea of nolo contendere admits matters alleged in the information when the plea is entered, and places the defendant in the same position as though he had pleaded guilty or had been found guilty by the verdict of a jury. Brozosky v. State, 1928, 197 Wis. 446, 451, 222 N.W. 311."
The Supreme Court of New Jersey has approved the use of a plea of nolo contendere or "non vult" in a case similar to the instant case. In The State of New Jersey v. Huber, 18 N.J. 447, 114 A.2d 260, said Court affirmed a judgment where the defendant, under indictment for first degree murder, first offered a plea of guilty for which the Court substituted a plea of "non vult," and upon argument of defendant's counsel and the recommendation of the prosecutor, the Court accepted the second plea and sentenced the defendant to life imprisonment. The Supreme Court adopted the opinion of the Superior Court, Appellate Division, which reads:
"`It appears that on June 9, 1949 Huber was indicted for murder. Counsel were assigned to defend him. On November 29, 1949 he appeared in open court with counsel and on being asked how he pleaded, answered: "Guilty," whereupon the court interposed: "Non vult."

"`Then followed statements by both attorneys who represented him, designed to persuade the court that the plea of non vult should be accepted, thus avoiding trial with its possibility of death sentence. The prosecutor joined them in recommending favorable action by the court. The plea was accepted and Huber was sentenced to the New Jersey State Prison for the term of his natural life.
"`The basis for the present application is that since the only plea offered by Huber was that of guilty and since such a plea to a first degree murder indictment cannot be accepted, the court had no authority to substitute the non vult plea, but was obliged to set the case down for trial.
"`This precise question was raised on the same record in an earlier proceeding and disposed of adversely to appellant. State v. Huber, 23 N.J. Super. 107 [92 A.2d 640] (App.Div. 1952).
"`The suggestion that a speedy trial had not been afforded also appears in Huber's brief as well as some criticism of his counsel. The record provides no support for either claim.
"`The action of the trial court is affirmed.'"
We hold that the plea of nolo contendere had the same effect, as far as this *291 case is concerned, as a plea of guilty. Such is the conclusion of the vast majority of the more recent cases we have read on this subject. See Montrose Lumber Co. v. United States, 10 Cir., 124 F.2d 573, 577; Twin Ports Oil Co. v. Pure Oil Co., D.C., 26 F. Supp. 366, 376; Caminetti v. Imperial Mut. Life Ins. Co., 59 Cal. App.2d 476, 139 P.2d 681, 689; State v. Herlihy, 102 Me. 310, 66 A. 643, 646; United States v. Plymouth Coupe, D.C., 88 F. Supp. 93, 95; Commonwealth ex rel. Warner v. Warner, 156 Pa.Super. 465, 40 A.2d 486, 487; State v. McElroy, 71 R.I. 379, 46 A.2d 397, 403; State v. Thomas, 236 N.C. 196, 72 S.E.2d 525, 528; Brozosky v. State, 197 Wis. 446, 222 N.W. 311; Olszewski v. Goldberg, 223 Mass. 27, 111 N.E. 404; Fidelity-Phoenix Fire Ins. Co. of New York v. Murphy, 231 Ala. 680, 166 So. 604, 609; Fox v. Scheidt, 241 N.C. 31, 84 S.E.2d 259, 262; State v. Ayers, 226 N.C. 579, 580, 39 S.E.2d 607; Farrington v. King, 128 F.2d 785, 786; Schireson v. State Board of Medical Examiners of New Jersey, 129 N.J.L. 203, 28 A.2d 879, 882; In re 17 Club, Inc., 26 N.J. Super. 43, 97 A.2d 171, 172
Since we hold that a plea of nolo contendere has the same effect as a plea of guilty as to the case in which it is entered, we shall next examine the authorities to determine its effect on other matters complained of on appeal.
The appellee has, as aforesaid, stated this point:
"Whether an accused, after voluntarily entering a plea of nolo contendere to a criminal charge, being adjudicated guilty and sentenced thereon, may raise questions on appeal concerning matters other than the sufficiency of the accusatory writ."
At 152 A.L.R. 277, under the heading "Plea as Admission and Waiver of Defects," there appears the following:
"Since under a plea of nolo contendere, the allegations of the indictment stand as impliedly admitted, no issue of law or fact is raised. Consequently, after a plea of nolo contendere is entered, a stipulation of facts is ineffective to import an issue as to the sufficiency of the indictment, or an issue of fact upon the question of guilt or innocence.
"By pleading nolo contendere, the defendant thereby waives all formal defects in the proceedings of which he could have availed himself by a plea to the merits, a plea in abatement, a demurrer, or a motion to quash, and also his right to go to trial. Thus, it has been said that the defendant who has entered a plea of nolo contendere has no standing to argue that he did not have a fair trial, or that a jury trial was unconstitutionally denied to him. The implied waiver of trial by the defendant interposing a plea of nolo contendere may also preclude him from filing a bill of exceptions where the statute provides that a defendant is permitted to file such a bill only after conviction, or after the denial of his motion for a new trial.
"It has been said that the plea, like a demurrer, admits, for the purpose of the case, all the facts which are well pleaded, and only those. In accordance with this statement, the court will, generally speaking, refuse to go behind the indictment or to turn its proceedings relative to the imposition of sentence into a trial of the case, provided the plea was entered into `knowingly, voluntarily, and intelligently.' Once the plea is entered, unless retracted by leave of court, defendant's only avenue of escape is by motion in arrest of judgment, based, of course, upon some inherent, fatal defect apparent in the record, such as that the indictment charged no offense, or that it was defective, or that it showed on its face that the offense charged was barred by the statute of limitations. These are the same objections the defendant would equally be entitled to raise after *292 a plea of guilty. However, if such inherent defect exists, the court is authorized in proper circumstances, to strike on its own motion the plea of nolo contendere from the record and dismiss the information in order to protect the defendant against his own ignorance."
See cases cited under note 141, page 272, through note 156, page 280.
14 Am.Jur. 954, § 275, in discussing nolo contendere, states:
"When accepted by the court, it becomes an implied confession of guilt and, for the purposes of the case only, equivalent to a plea of guilty. Like a demurrer, the plea admits for the purposes of the case all the facts which are well pleaded and waives all formal defects in the proceeding of which the accused could have availed himself by a plea to the merits, a plea in abatement, a demurrer, or a motion to quash. Such a plea does not preclude the defendant from moving in arrest of judgment upon the ground that the indictment is defective or from afterwards prosecuting error on the ground that no offense is charged in the indictment."
See also 22 C.J.S. Criminal Law § 425(4), Effect of Plea, p. 1205.
In Crolich v. United States, 196 F.2d 879 (5th Cir.), the United States Court of Appeals held:
"A plea of nolo contendere, like a plea of guilty, leaves open for review only the sufficiency of the indictment, and waives all defenses other than that the indictment charges no offense. Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347; United Brotherhood of Carpenters [etc.] v. United States, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973; United States v. Luvisch, D.C., 17 F.2d 200; Rice v. United States, 5 Cir., 30 F.2d 681; Kachnic v. United States, 9 Cir., 53 F.2d 312; Roberto v. United States, 7 Cir., 60 F.2d 774; Forthoffer v. Swope, Warden, 9 Cir., 103 F.2d 707; Weatherby v. United tates, 10 Cir., 150 F.2d 465. * * *"
Vol. 2, Standard Encyclopaedia of Procedure, p. 895, makes the following comment upon the effect of a plea of guilty:
"(1) In General.  A plea of guilty admits all facts sufficiently pleaded, confesses the indictment or information to be wholly true, with respect to each and every allegation, operates as a waiver of any defense, and of the constitutional right to a trial by jury, and with it, of course, the constitutional guarantees with respect to the conduct of criminal prosecutions, is equivalent to a conviction, and authorizes the imposition of the sentence prescribed by law upon a verdict of guilty of the crime sufficiently charged in the indictment or information. But to determine the measure of punishment the court should hear testimony, and indeed must under statutory requirement. A plea of guilty as to one count in an indictment or information does not prevent a trial as to any other count.
"(11) Waiver of Defects in Accusation.  Since the effect of a plea of guilty is merely to admit the truth of whatever is sufficiently alleged in the accusation, by entering such a plea the defendant is not precluded from urging the insufficiency of the indictment or information because of defects of a substantial character, even for the first time on appeal. But technical errors in a complaint cannot be considered upon a motion in arrest after a plea of guilty."
The appellant's sixth question is as follows:
"6. Can the court accept a plea of nolo contendere to a capital offense?"
We have found no case where a defendant has been sentenced to a death penalty on a plea of nolo contendere. Logically, *293 we see no reason why a plea of nolo contendere in a capital case should not be upheld even when the death penalty has been imposed, considering the present development of the law as to the use of the plea. It is apparently true that under the historical development of the law in England a person could not plead nolo contendere or non vult to a capital crime. Apparently he could not plead guilty to a capital crime either.
Ehrlich's Blackstone, page 928-929, states:
"PLEA OF NOT GUILTY: THE GENERAL ISSUE  The general issue, or plea of not guilty upon which plea alone the prisoner can receive his final judgment of death. In case of an indictment of felony or treason, there can be no special justification put in by way of plea; as, on an indictment for murder, a man cannot plead that it was in his own defense against a robber on the highway or a burglar, but he must plead the general issue, not guilty, and give this special matter in evidence. For (besides that these pleas do in effect amount to the general issue; since, if true, the prisoner is most clearly not guilty) as the facts in treason are laid to be done traitorously and against his due allegiance, and, in felony, that the killing was done feloniously, these charges of a traitorous or felonious intent, are the points and very gist of the indictment, and must be answered directly, by the general negative, not guilty; and the jury upon the evidence will take notice of any defensive matter, and give their verdict accordingly as effectually as if it were, or could be, specially pleaded. So that this is, upon all account, the most advantageous plea for the prisoner."
In some jurisdictions at the present time one cannot plead guilty in a capital case. The Florida Supreme Court, however, has upheld a plea of guilty in a capital case in which the death penalty was imposed.
In McCall v. State, 136 Fla. 343, 186 So. 667, the Court said:
"* * * The law is settled in this country that when authorized by statute, the Court may in a capital case accept a plea of guilty and when done, the defendant waives his right of trial by jury. When this is done, the trial court may examine the evidence and determine the punishment within the statute to be administered. He found nothing in the evidence to warrant commutation of the defendant. This procedure has been repeatedly upheld by the Supreme Court of the United States and by the State Courts. Hallinger v. Davis, 146 U.S. 314, 13 S.Ct. 105, 36 L.Ed. 986, and cases there cited; Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263; McCall v. State [135 Fla. 712], 185 So. 608, decided by this Court January 3, 1939; Green v. Commonwealth, 12 Allen, Mass., 155."
In the McCall case, supra, the Supreme Court affirmed the death sentence imposed by the trial court on the accused's plea of guilty to a capital crime.
We do not deem it essential to answer the sixth question, however, since it is not crucial to the outcome of this case, as the plea of nolo contendere and acceptance of a life sentence by the defendant took the case out of the death penalty category; but if it should become necessary, we would answer it affirmatively.
Appellant's seventh question reads:
"7. Can the court accept a plea of nolo contendere to a capital offense upon the express condition that a life sentence be imposed upon the defendant?"
The appellant then states in his brief: (p. 38)
"It has been unanimously held that in the absence of a statute to the contrary, the courts cannot accept the plea of nolo contendere to an indictment for a capital offense for which capital *294 punishment is prescribed." (Citing 152 A.L.R. 261.)
As to question #7, we hold that the defendant, by voluntarily pleading nolo contendere on the condition that he would be given a life sentence, thus avoiding a chance of facing death by electrocution, is in no position, under the circumstances, to complain of the trial court's acceptance of his plea. The defendant had previously been tried as an accessory to the murder of Judge C.E. Chillingworth, the husband of the victim in the instant case, and had been convicted by the jury, with a recommendation for mercy, receiving a life sentence therefor. The defendant, himself an experienced attorney, a former city judge, and represented by an able trial attorney, should not be permitted by the courts to escape a life sentence on the ground stated in question #7.
We do not find in this record any indication of coercion or intimidation of either the defendant or his counsel. The record shows that the following took place: (Tr. 79-80)
"MR. O'CONNELL: Your Honor, the State has been advised through Mr. Fogle, counsel for Joseph A. Peel, Jr., that he is willing to enter a plea of nolo contendere to the charge of accessory before the fact to the first degree murder of Marjorie M. Chillingworth provided he's given a life sentence, concurrent with the previous life sentence. And the State is willing to accept such a plea.
"MR. FOGLE: May it please Your Honor, upon these conditions, Mr. O'Connell's statement is correct and at this time, presuming the Court's approval, we would withdraw the plea of not guilty previously entered to the indictment in this cause and with the Court's understanding and permission enter a plea of nolo contendere to the indictment.
"THE COURT: Upon the statement of counsel for the State and for the defendant, the motion for leave to withdraw the plea of not guilty is granted.
"Mr. Peel, you have had a legal education and have been a member of The Florida Bar. Have you conferred with your counsel concerning your counsel's announcement that he just made?
"MR. PEEL: I have, Your Honor.
"THE COURT: With your training and with your experience, you are aware of the import of the plea which your counsel states you desire to enter. Do you desire to enter such a plea and is the entry of such a plea voluntary on your part?
"MR. PEEL: I do desire to and the plea is voluntary.
"THE COURT: The Court will permit the entry of a plea of nolo contendere and such plea is entered."
In Lewis v. State, Fla. 1956, 93 So.2d 46, the Florida Supreme Court, in an opinion written by Mr. Justice Terrell, said:
"It further appears from a thorough examination of the record that up to January 18, 1954, the date petitioner entered his plea of guilty, resulting in a life sentence, he had not been coerced, intimidated or otherwise influenced to do so. He had the advice of counsel who had full knowledge of the facts and evidence relied on by the state to convict petitioner. It appears that petitioner's counsel advised and perhaps urged him to plead guilty in order to escape the electric chair. This is not of the character of coercion that would relieve from the judgment of conviction. The court was aware of this. After all is said, it conclusively appears that appellant got what he bargained for  a life sentence and has no right to complain. McKown v. State, Fla., 54 So.2d 54."
*295 The trial judge in the instant case was the same judge that had presided over the trial of the defendant resulting in his conviction for the murder of Judge C.E. Chillingworth and was, therefore, familiar with the evidence that would probably have been introduced had the cause proceeded to trial conclusion.
The appellant seeks to bring himself within the purview of Johnston v. State, 1933, 112 Fla. 189, 150 So. 278, in which case the defendant changed his plea from not guilty to guilty after a denial of his motion for a change of venue because he believed he could not obtain a fair trial before a jury at the time and the place of the trial. The Supreme Court held that the defendant had not waived the error in denying his motion for a change of venue by pleading guilty.
The factual situation in the Johnston case is very different from the situation presented in this case. Mr. Justice Brown, who wrote the opinion of the court sets forth the many factors that caused the Supreme Court, by a divided court, to hold that under the factual situation presented, including various affidavits, etc., introduced, that Johnston changed his plea from not guilty to guilty, only after the denial of his motion for change of venue. Mr. Justice Brown's opinion was concurred in by Justices Terrell and Ellis, while Justices Whitfield and Buford dissented. Mr. Chief Justice Davis did not participate in the final decision of the Court but stated that he was in the City of Lakeland on the afternoon and night of the tragedy which led to the sentencing of Johnston and while there witnessed many of the exciting happenings which he found to be the basis for the sole proposition of law upon which the appeal was about to turn, to-wit: change of venue. He stated in his statement:
"Nevertheless, without participating with Mr. Justice BUFORD to the extent of voting with him for an affirmance of the judgment, but fully agreeing with the principles of law announced in his dissenting opinion as to the legal effect of a plea of guilty interposed after a motion for change of venue has been made and denied in a case like this, I am content to allow the case to be remanded for a new trial in order that all doubt may be forever banished as to the fairness of the trial accorded a prisoner condemned to death.
"My view is that no sentence of death should be upheld by a technical affirmance based upon an evenly divided Supreme Court as to whether or not the defendant has had a fair and impartial trial according to the state and federal Constitutions. I therefore refrain from participating in the decision of this case in order that my vote for affirmance of the judgment will not lead to the result of upholding the sentence against this defendant on such an equal division of this court as I have just referred to."
Mr. Justice Brown set forth the events of that day referred to. The writer particularly remembers it since he participated in the prosecution of the case in the trial court. The facts, as stated in the opinion, are as follows:
"It was on the afternoon of Easter Sunday, March 27, 1932, in the City of Lakeland, Fla., that two highly esteemed police officers were killed while in the discharge of their duty. This terrible occurrence naturally aroused a high degree of public indignation. This plaintiff in error was charged with the murder of one of these popular officers, and Perry Acree was charged with the murder of the other. On March 28, 1932, the circuit judge summoned the grand jury to convene the following day, and on that day, March 29, plaintiff in error was indicted. The court recessed until April 2, at which time counsel for the defendant, Johnston, presented a motion for a change of venue and also a motion for continuance, *296 both of which were overruled, and the defendant was arraigned and entered a plea of not guilty. The court recessed until April 6th, motion for continuance to the October term was denied, and then the case was set for trial on the 18th day of April, 1932, when the motion for change of venue, together with additional evidence in support thereof, was again presented by counsel for the defendant, and, upon being denied by the court, the defendant changed his plea as above stated.
"The defendant's motion and the affidavits and evidence in support of same, in spite of the prosecution's traverse and evidence, show a situation which, under the previous decisions of this court, entitled the defendant to a change of venue, or at least to the granting of the motion for postponement until the popular excitement had subsided.
"Certain significant facts stand out, practically undisputed: The mob of two thousand or more which gathered around the city jail immediately after the defendant's incarceration on the afternoon of the homicide, demanding that the defendant be turned over to them; the address to the mob, made by a popular and influential citizen at the request of the mayor, seeking to quell their excitement and to prevail upon them to let the law take its course; the calling out of the State Militia by the Governor at the request of the state attorney, who guarded the defendant with machine guns from the evening of March 27th until the afternon of March 28th; then the removal of the defendant under heavy guard to the county jail in Bartow, where the guard of state troops was again resumed; the guarding by armed men of the highways leading from Lakeland for the evident purpose of taking the defendant from the duly authorized officers of the law and wreaking mob violence upon him; the wide publicity which was given all this by the newspapers of the county; the great public indignation and hostility which were aroused, not only against the defendant, but even against the brave young and inexperienced attorneys who undertook Johnston's defense; the widespread newspaper publicity, which continued up to the day of the trial  all of these are earmarks of a situation which, as the motion for change of venue well stated, made it practically and psychologically impossible to secure an impartial and unprejudiced jury in that county at the time of the trial."
The trial of the defendant in the instant case, in Bartow, Florida, came some five and one-half years after the death of Mrs. Marjorie Chillingworth on the 15th day of June, 1955, in Palm Beach County, Florida, and more than a year after an indictment had been returned on the 23rd day of November, 1960, in Palm Beach County. No showing of hostility toward the defendant appears in the record.
The trial in the instant case began on November 27, 1961, and on Wednesday, November 29th, after more than two days had been spent in attempting to secure a jury and before a jury had been sworn to try the case, the appellant withdrew his plea of not guilty and entered a plea of nolo contendere to the indictment. In addition to the plea of nolo contendere, the evidence adduced in behalf of the State in the trial of the defendant, Joseph A. Peel, Jr., as an accessory to the murder of Judge C.E. Chillingworth and including volumes 1 through 15 of the transcript of testimony in that case, was introduced in this cause to substantiate the charge of accessory before the fact to the first degree murder of Marjorie E. Chillingworth.
The able attorney for the defendant, at the oral argument before this court, was asked this question:
"The defendant has, in addition to his nolo contendere questions, posed several *297 additional points in his brief. Suppose, instead of pleading nolo contendere he had plead guilty, how many of the points could properly be considered?"
Counsel replied that he believed only the double jeopardy question could have been considered.
We differ with defendant's attorney on his double jeopardy exception and hold that under the facts of this case it also would be waived on a guilty plea as it is in this case under a plea of nolo contendere. However, we have considered the contention of the defendant and hold that even if the defense of double jeopardy was not waived, there has been no double jeopardy in this case.
The Florida Supreme Court, in McHugh v. State, 1948, 160 Fla. 823, 36 So.2d 786, held, where two boys had been killed when a motor scooter on which they were riding was struck by an automobile, that an acquittal of the defendant automobile driver on the charge of killing one of the boys, based on culpable negligence, did not bar on the ground of "former jeopardy" a subsequent prosecution of the defendant on a charge of manslaughter for killing the other boy by operation of a motor vehicle while intoxicated. The Court held that double jeopardy applies to the offense, not the act causing the offense.
The Supreme Court, in its opinion, said:
"Double jeopardy applies to the offense, not the act causing the criminal offense. The gist of this offense is the unlawful homicide of which there were two. There is an offense for each unlawful homicide. It is not difficult to imagine a case where a defendant might by criminal negligence cause an explosion which would annihilate a number of persons. Great difficulty might arise on proving the actual death of one particular individual, yet it would be a travesty on justice to say that the wrongdoer could not then be again arraigned for the criminal killing of some other named victim. In the two imaginary cases the evidence would be different thereby observing the distinction noted and discussed in Driggers v. State, 137 Fla. 182, 188 So. 118 and other cases cited there.
"One of the tests often required by this and other courts is whether the evidence will be the same in each prosecution.
"It is well to point out here that in addition to the difference in identity of the victims the statute requires different proof in other respects. * * *"
This Court, in the case of State v. Lowe, Fla.App. 1961, 130 So.2d 288, held that a defendant who had been previously acquitted of the offense of manslaughter, was not subjected to double jeopardy by another information charging the offense of manslaughter for causing the death of another individual killed in the same automobile collision.
The appeal was taken by the State from an order of the lower court upholding the defendant Lowe's plea of double jeopardy. In the opinion of the court, written by Associate Judge I.C. Spoto, it was said:
"In this jurisdiction, the Supreme Court of Florida has aligned itself with the majority view that double jeopardy applies to the offense, not the act causing the criminal offense. The gist of this offense is the manslaughter death of which there were three in the case at bar. This Court holds that where two or more persons are killed by a single criminal act, there are as many separate and distinct offenses as there are persons killed by the unlawful act. See McHugh v. State, 160 Fla. 823, 36 So.2d 786; State v. Bacom, 159 Fla. 54, 30 So.2d 744, 172 A.L.R. 1050 and cases and authorities therein cited.
* * * * * *
"In the case at bar the evidence required to support the instant information for the manslaughter of Andrew *298 Gerald Smith through culpable negligence in the operation of an automobile would not have been sufficient to support the first information for the manslaughter of Frank Lawton through culpable negligence in the operation of an automobile without proof of an additional fact, and the evidence required to support the first information for the manslaughter of Frank Lawton would not be sufficient to support the information for the manslaughter of Andrew Gerald Smith without proof of an additional fact, that is to say, the corpus delicti, which would necessarily include proof that the particular individual named in the information was killed as a result of the automobile collision."
Therefore, as a corollary, the murder of Mrs. Chillingworth was a separate crime from that of Judge Chillingworth, requiring proof of a separate corpus delicti which negatives any finding of double jeopardy.
Recapitulating, we hold that the plea of nolo contendere has the same effect as a guilty plea insofar as the particular case in which it is entered is concerned. Moreover, since the Florida Supreme Court has approved the acceptance of a guilty plea in a capital case, there is no reason why a plea of nolo contendere cannot also be accepted in such a case. Be that as it may, however, by pleading nolo contendere and receiving a life sentence, the defendant took his case from under the capital case category. A different rule applicable in such cases would still not be applicable here.
We hold that the defendant cannot raise his first five questions as he waived them by his nolo contendere plea. Additionally, as to defendant's fifth point, we hold that on this record the defense of double jeopardy does not lie. As to the first four points, even if not waived by his nolo contendere plea, appellant has failed to demonstrate reversible error.
Affirmed.
WHITE, J., and OGILVIE, CLAUDE, Associate Judge, concur.