JOSEPH E. JOHNSTON v. STATE.

150 So. 278.
Division B.
Opinion Filed October 3, 1933.

*J. L. Chancey,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BROWN, J.—At the threshold of this case, we are confronted with the question whether or not the trial court committed reversible error in denying the motion for change of venue, and if so, whether or not under the circumstances

of this case this error was cured or waived by what subsequently transpired.

It was only after the final denial of the motion for change of venue, which was presented anew on the day of the trial, April 18th, 1932, together with additional evidence in support thereof, that the plaintiff in error withdrew his plea of not guilty and interposed a plea of guilty, which, under the statute, required the trial judge, without a jury, to proceed to take the testimony and determine the degree of the homicide, and pass sentence accordingly. The record indicates that it was because of the denial of his motion for change of venue that the plaintiff in error, believing that he could not obtain a fair and impartial trial before a jury at the time and place of the trial, decided to change his plea, as above stated, and thus forego his constitutional right to a jury trial, and leave it to the trial judge to determine, under the statute, the degree of his guilt. Thus the error in denying the motion was not waived.

It was on the afternoon of Easter Sunday, March 27, 1932, in the city of Lakeland, Florida, that two highly esteemed police officers were killed while in the discharge of their duty. This terrible occurrence naturally aroused a high degree of public indignation. This plaintiff in error was charged with the murder of one of these popular officers and Perry Acree was charged with the murder of the other. On March 28th, 1932, the Circuit Judge summoned the Grand Judy to convene the following day, and on that day, March 29, plaintiff in error was indicted. The Court recessed until April 2, at which time counsel for the defendant, Johnston, presented a motion for a change of venue and also a motion for continuance, both of which were overruled, and the defendant was arraigned and entered a plea of not guilty. The Court recessed until April 6th, motion

for continuance to the October term was denied, and then the case was set for trial on the 18th day of April, 1932, when the motion for change of venue, together with additional evidence in support thereof, was again presented by counsel for the defendant, and, upon being denied by the Court, the defendant changed his plea as above stated.

The defendant's motion and the affidavits and evidence in support of same, in spite of the prosecution's traverse and evidence, shows a situation, which, under the previous decisions of this Court, entitled the defendant to a change of venue, or at least to the granting of the motion for postponement until the popular excitement had subsided.

Certain significant facts stand out, practically undisputed; the mob of two thousand or more which gathered around the city jail immediately after the defendant's incarceration on the afternoon of the homicide, demanding that the defendant be turned over to them; the address to the mob, made by a popular and influential citizen at the request of the Mayor, seeking to quell their excitement and to prevail upon them to let the law take its course; the calling out of the State Militia by the Governor at the request of the State Attorney, who guarded the defendant with machine guns from the evening of March 27th until the afternoon of March 28th; then the removal of the defendant under heavy guard to the county jail in Bartow, where the guard of State troops was again resumed; the guarding by armed men of the highways leading from Lakeland for the evident purpose of taking the defendant from the duly authorized officers of the law and wreaking mob violence upon him; the wide publicity which was given all this by the newspapers of the county; the great public indignation and hostility which were aroused, not only against the defendant, but even against the brave, young and inexperienced at-

torneys who undertook Johnston's defense; the widespread newspaper publicity, which continued up to the day of the trial; all of these are earmarks of a situation which, as the motion for change of venue well stated, made it practically and psychologically impossible to secure an impartial and unprejudiced jury in that county at the time of the trial.

The rights of society to protection from the lawless by the prompt and vigorous administration of the criminal laws, must be fully conceded, but the traditions of the Anglo Saxon race and the Constitution and laws of our State guarantee to all persons accused of crime, whether innocent or guilty, a fair and impartial trial. It is for this purpose that our Statutes providing for change of venue in proper cases were enacted. This was in our opinion a proper case for the application of those Statutes.

In Reed v. State, 94 Fla. 32, 113 So. 630, this Court said:

"It is not the speed or promptness of grand jury investigation and indictment which is likely to prejudice the case of a defendant or prevent him from having a fair and impartial trial before a jury of his peers. It is when the trial before the petit jury is forced upon him before he has had time to properly consult with his counsel and prepare his defense; or when compelled to go to trial so soon after the commission of the crime charged, in cases where great popular excitement and indignation have been aroused, as to make a calm, dignified, fair and impartial trial psychologically impossible—it is then that the accused has good grounds for objection and exception when his prayers for postponement and allowance of more time go unheeded by the trial court.

Again, in Atkins v. State, 100 Fla. 897, 130 So. 273, this Court held that:

"Applications for change of venue under our law, Sec-

tions 2670 and 2671, Revised General Statutes of Florida (Sections 4337 and 4338, Comp. Gen. Laws of 1927) are predicated on a well grounded 'fear' that it is impractical to obtain a fair trial and a qualified jury in the county where the crime occurrred, or the action acccrued. We do not understand the statute to mean that it must be conclusively shown that it is impossible to have a fair trial in the county where the venue is laid, but it is sufficient to show a reasonable apprehension that the defendant will not secure a fair and impartial trial or that the jury are under an influence inimical to the accused."

For these, and other reasons which we deem it unnecessary to discuss at this time, we think the judgment of the court below must be reversed.

Reversed and remanded.

TERRELL and ELLIS, J. J., concur.

WHITFIELD, and BUFORD, J. J., dissent.

DAVIS, C. J., not participating on final decision for reasons stated in attached statement filed herewith.

BUFORD, J. (dissenting): In this case the plaintiff in error was indicted in the Circuit Court of Polk County for murder in the first degree.. He was arraigned in open court and pleaded not guilty. A day for trial was set and afterwards trial was postponed to a later date in the term. He presented motions for continuance and for change of venue.

It is not necessary to consider the action of the Court in overruling these motions because when the day arrived for the trial the defendant appeared in open court, withdrew his plea of not guilty and pleaded "guilty as charged."

Thereupon, under the provisions of Section 5038, R. G. S., 7140 C. G. L., the court proceeded to hear the testimony and determine the degree of the unlawful homicide of which the defendant was guilty.

Under this state of facts, the only question for us to determine is whether or not the evidence showed that the accused entertained a premeditated desire to effect the death of the deceased at the time he committed the act which resulted in such death.

Of the sufficiency of the evidence as to this essential element of the crime there can be no doubt. The evidence shows beyond question that one, Perry Acree, and his mother were engaged in an altercation with two police officers; that Perry Acree had lain down on the ground to keep the police officers from putting him in an automobile to take him to jail and that Mrs. Acree, his mother, had gotten down over him to protect him from the police officers and to obstruct their purpose in arresting and carrying him to jail. That Johnston, who was not related to either party and had nothing to do with the affray, came upon the scene and Mrs. Acree called upon him for help; that he deliberately went into her house and returned with a pistol, not in open vision, but approached the parties engaged in the altercation from the rear of police officer Nicholson, drew the pistol and deliberately shot Nicholson in the back of the head, killing him instantly.

Now the majority opinion in this case says: "The record indicates that it was because of the denial of his motion for change of venue that the plaintiff in error, believing that he could not obtain a fair and impartial trial before a jury, at the time and place of the trial, decided to change his plea, as above stated, and thus forego his constitutional right to a jury trial, and leave it to the trial judge to determine, under the statute, the degree of his guilt. Thus the error in denying the motion was not waived."

I do not find in the record that which leads me to agree with the above quoted conclusion. I think that the record

shows that the defendant was guilty of a most cold-blooded and unwarranted murder in the first degree, and further that the defendant was fully cognizant of the enormity and seriousness of his offense and that he was playing for time, which is the course most desired by all criminals when they know that the evidence warrants a conviction beyond any question of doubt.

The motion for a change of venue was traversed and evidence in support of the motion and in support of the traverse was presented to the Court. On consideration of this evidence, it was the duty of the trial judge to exercise his sound discretion and, if he found from the evidence the facts to be such that the defendant could have a fair and impartial trial in that jurisdiction, it was his duty to overrule the motion. As I see it, the record would not warrant us in saying that the judge abused his discretion and committed a reversible error which would have required a reversal of the case had the defendant gone on to trial before a jury and had been convicted.

As I see the record, when the time came for the defendant to face a jury he decided that he would rather risk his fate in the hands of the trial judge. In other words, he knew what the facts were; he knew that he was guilty and would be proven guilty of the cold-blooded, unwarranted and unprovoked murder and he evidently thought there was some probability that the trial judge would not have the courage to inflict the death penalty when the whole responsibility was laid upon his shoulders. Whereas, if the case was submitted to a jury there would be no element upon which he could hang a hope of a recommendation to mercy.

I think justice demanded that a fair and impartial trial should result in the judgment which obtained in this case.

If we are to say that when law-abiding people become incensed and forcefully express their disapproval of the deliberate and unwarranted taking of human life like that then the criminal who so takes human life should not be tried in that community, we go a long way toward encouraging the perpetrators of such crimes, as well as to encourage the substitution of mob violence in lieu of the orderly and lawful administration of justice.

I, therefore, do not concur with the majority opinion in this case.

DAVIS, C. J. (not participating in final decision) : I happened to be in the City of Lakeland on the afternoon and night of tragedy which led to the conviction and sentencing to death of the plaintiff in error in this case. While there I witnessed many of the exciting happenings which I now find have been made the basis for the sole proposition of law upon which this appeal is about to turn, that is, the proposition of change of venue. I doubt that I am disqualified as a matter of law to participate in the final decision of this writ of error, but at the same time, I consider it only fair to the convicted defendant, in a matter involving as it does, his life or death, that I yield to the views of the three members of this Court who have reached the definite conclusion that a new trial should be awarded in the interest of justice, in order to avoid having this convicted defendant go to his death in the electric chair by an equal division of the members of this Court on the question whether or not he has had that fair and impartial trial which the constitution contemplates that he should be accorded before he is condemned, guilty though he may be.

Nevertheless, without participating with Mr. Justice BUFORD to the extent of voting with him for an affirmance of the judgment, but fully agreeing with the principles of

law announced in his dissenting opinion as to the legal effect of a plea of guilty interposed after a motion for change of venue has been made and denied in a case like this, I am content to allow the case to be remanded for a new trial in order that all doubt may be forever banished as to the fairness of the trial accorded a prisoner condemned to death.

My view is that no sentence of death should be upheld by a technical affirmance based upon an evenly divided Supreme Court as to whether or not the defendant has had a fair and impartial trial according to the State and Federal constitutions. I therefore refrain from participating in the decision of this case in order that my vote for affirmance of the judgment will not lead to the result of upholding the sentence against this defendant on such an equal division of this Court as I have just referred to.