228 So.2d 400 (1969)
Wayne Thomas ASHBY, Appellant,
v.
STATE of Florida, Appellee.
Robert David CAREY, Appellant,
v.
STATE of Florida, Appellee.
Nos. 68-647  68-650.
District Court of Appeal of Florida. Second District.
November 7, 1969.
Rehearing Denied December 18, 1969.
*401 David W. Barrow, III, Pinellas Park, for Wayne Thomas Ashby.
Robert E. Jagger, Public Defender, and Edwin I. Ford, Asst. Public Defender, Clearwater, for Robert David Carey.
Earl Faircloth, Atty. Gen., Tallahassee, and Michael N. Kavouklis, Asst. Atty. Gen., Lakeland, for appellee.
HOBSON, Chief Judge.
Defendant-appellant Robert Carey (Case Nos. 68-647 and 68-648) and defendant-appellant, Wayne Ashby (Case Nos. 68-649 and 68-650), each bring their timely appeals from judgments of guilty entered in a non-jury trial on pleas of nolo contendere and sentences imposed thereon.
Each defendant was charged with grand larceny in two different direct informations. One information charged each defendant with stealing a boat trailer and the other charged each defendant with stealing an outboard motor. On the night of September 27, 1968, two deputy sheriffs of Pinellas County were looking for a man *402 named Allen West on a charge of armed robbery. During the course of their search the deputies went to the Hare and Hound Bar where they found West in the company of the two appellants herein. The deputies arrested West at that time but did not arrest appellants. Instead, Ashby and Carey were later taken to the Pinellas County Sheriff's Operational Office situated at the airport facility, arriving there at approximately 12:30 A.M. on September 28, 1968. The defendants at this time were not advised of their constitutional rights. The defendants-appellants were interrogated at this time for one to two and a half hours. Following this extensive "conversation" the appellants were taken at their request to a certain address which they said was their house. Though appellants were free to leave at any time during this interrogation they had no method of doing so as it was an early hour in the morning and the operational facility was a good distance from any public transportation.
At approximately 3:00 A.M. the same morning, one Deputy Anderson of the Pinellas County Sheriff's Department, received information from an informant that defendants Ashby and Carey were living with West in the 2800 block of 60th Avenue. At 4:00 A.M. this same morning the informant showed the deputies the house where Ashby and Carey were alleged to then be living and it was observed at that time that a red Mustang was parked in the yard. The deputies then determined by police radio that the license tag on the Mustang was improper. At this juncture and without first obtaining a search warrant, the deputies proceeded to enter upon the premises wherein an extensive search was carried out. In doing so they determined that the boat trailer and outboard motor which are the subject matter of the information in the present case were inside a closed garage on the premises. They determined this by looking through a crack in the garage door. At the time of this search there was in the yard another boat trailer and outboard motor which did not prove to be the subject matter of the information for larceny which was subsequently filed in this suit.
At this point help was summoned and deputies were placed on all four sides of the house. Deputy Anderson then knocked on the door, and when defendant Carey came to the door Deputy Anderson jerked him outside, arrested him and all of the officers then entered the house where they arrested defendant Ashby and proceeded to search the house. The arrests made at this time were for receiving and concealing stolen property (red Mustang), a charge for which defendants were never tried, nor informed against.
The defendants were then taken to the sheriff's office where they were confronted by the sheriff's department with the evidence (boat trailer and outboard motor closed in the garage) which had been seized. When so confronted, the defendants told everything. Motions to suppress the evidence gained by this search were timely made and denied. The confessions of the defendants were admitted into evidence at the trial, as were photos of the boat trailer and boat motor, over the objection of counsel and conviction by the court without a jury ensued. The question determinative of this appeal is whether the lower court erred in denying the defendants' motion to suppress evidence obtained without a valid search warrant. However, preliminary to entertaining such question we find it necessary to dispose of a contention raised by the state, which is: "May a defendant, after voluntarily entering a plea of nolo contendere to a criminal charge and being adjudicated guilty and sentenced thereon, raise questions on appeal concerning matters other than the sufficiency of the accusatory writ?"
It was only after the final denial of defendants' motions to suppress evidence in the instant case that the defendants withdrew their pleas of not guilty and interposed pleas of nolo contendere and waived *403 jury trials. In accepting the pleas of nolo contendere, the lower court stated:
"* * * [T]hat on the proceedings on the plea of nolo contendere, it was done specifically upon assurance from the Court and upon the understanding that the defendants waived none of their rights to object to these exhibits, and they are preserved, and all of the rights they might have are reserved."
* * * * * *
"Subject to the reservation of those rights, the Court will receive in evidence State's Exhibits 1, 4, 3, and 6. * * *"
* * * * * *
"* * * [A]ll of the actions of the defendants taken in light of the motion and or the Order denying the Motion to Suppress."
Our decision on this point is controlled by Johnston v. State, 112 Fla. 189, 150 So. 278 (1933), wherein the Supreme Court of Florida in speaking through Mr. Justice Brown stated:
"At the threshold of this case, we are confronted with the question whether or not the trial court committed reversible error in denying the motion for change of venue, and if so, whether or not under the circumstances of this case, this error was cured or waived by what subsequently transpired.
"It was only after the final denial of the motion for change of venue, which was presented anew on the day of the trial, April 18th, 1932, together with additional evidence in support thereof, that the plaintiff in error withdraw his plea of not guilty and interposed a plea of guilty, which, under the statute, required the trial judge, without a jury, to proceed to take the testimony and determine the degree of the homicide, and pass sentence accordingly. The record indicates that it was because of the denial of his motion for change of venue that the plaintiff in error, believing that he could not obtain a fair and impartial trial before a jury at the time and place of the trial, decided to change his plea, as above stated, and thus forego his constitutional right to a jury trial, and leave it to the trial judge to determine, under the statute, the degree of his guilt. Thus the error in denying the motion was not waived."
In Johnston v. State, supra, it was because of the denial of defendant's motion for change of venue that defendant changed his plea from not guilty to guilty. In the instant case it was the denial of defendants' motions to suppress evidence that caused them to change their pleas from not guilty to pleas of nolo contendere. There is no substantial difference in the facts in the instant case which would take it out of the ruling in Johnston v. State, supra. Therefore, as regards this point, we hold that the error, if any, in denying defendants' motions for the suppression of evidence was not waived.
Furthermore, though not necessary to our decision on this point, we have the statement of the trial judge in open court in the case sub judice which statement by itself would preserve the defendants' rights on appeal to question the denial of their motions to suppress.
The state contends that the case of Peel v. State, Fla.App. 1963, 150 So.2d 281, decided by this court would warrant a different result. The Peel case is not applicable as the defendant in Peel bargained a plea of nolo contendere in exchange for a life sentence to escape the electric chair. In the case sub judice the record indicates the change of plea to nolo contendere was occasioned by the trial court's denial of the motions to suppress.
We turn now to the question of whether the lower court erred in denying defendants' motions to suppress evidence seized without a search warrant and erred in not suppressing the other evidence which was the fruit of such search.
As this cause is to be reversed on the basis of an illegal search and seizure, we *404 will not here decide the question of whether the arrests of defendants herein were valid but will proceed on the hypothesis that they were.
The case we initially look to in reaching our decision herein is Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Chimel case is briefly summarized for us in 23 L.Ed.2d from which we quote at page 685:
"After arresting the defendant in his home for burglary of a coin shop, police officers conducted a search of his entire three-bedroom house, including the attic, the garage, a small workshop, and various drawers. Over the defendant's objection, various items  primarily coins  which were found through the search were admitted into evidence against him at his trial for burglary in a California Superior Court; he was convicted; and his conviction was affirmed by the California Court of Appeal (61 Cal. Rptr. 714) and the California Supreme Court (68 Cal.2d 436, 67 Cal. Rptr. 421, 439 P.2d 333), both courts holding that although the officers had no search warrant, the search of the defendant's home had been justified on the ground that it had been incident to a valid arrest.
"On certiorari, the United States Supreme Court reversed. In an opinion by STEWART, J., expressing the view of six members of the court, and overruling Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, it was held that since the search of the defendant's home went far beyond his person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him, and since there was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area, the scope of the search was unreasonable under the Fourth and Fourteenth Amendments, and the defendant's conviction could not stand."
From the majority opinion in Chimel v. California, supra, we quote the concluding paragraph found in 395 U.S. at page 768, 89 S.Ct. at page 2043, 23 L.Ed.2d at page 697:
"Application of sound Fourth Amendment principles to the facts of this case produces a clear result. The search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was, therefore, `unreasonable' under the Fourth and Fourteenth Amendments and the petitioner's conviction cannot stand."
In the instant case defendant Carey was arrested outside the front door. Defendant Ashby was arrested inside the house. In applying the rule of law enunciated in Chimel v. California, the arresting officers as incident to the lawful arrests could have searched the person of Carey and the person of Ashby and the immediate area around each from within which each might have obtained a weapon or something that could have been used as evidence against them which they could have concealed or destroyed. There was no justification for the search conducted throughout the house or the seizure of the trailer and motor from the garage.
The State next contends that the search of the garage was lawful for the reason that the discovery of the boat trailer and motor came within the purview of this court's decision in Cobb v. State, Fla.App. 1968, 213 So.2d 492, in which this court held that even if the searching authority were a trespasser upon the grounds surrounding a building evidence found which was in open view would not be the result of an illegal search.
In Cobb v. State, supra, the searching authorities trespassed on the grounds surrounding *405 the building and discovered a pocketbook lying in some weeds on the grounds. This pocketbook was later used in evidence. In the instant case the searching authority trespassed upon the grounds and peeked through a crack in the garage door in order to discover the boat trailer and motor which was later used in evidence.
We conclude that there is a factual difference in the two cases. Our conclusion is based on the decision of the United States Supreme Court in McDonald v. United States, 335 U.S. 451, 452, 69 S.Ct. 191, 93 L.Ed. 153, 155 (1948), in which Mr. Justice Douglas spoke the following for the Court:
"On the day of the arrest three police officers surrounded the house. This was midafternoon. They did not have a warrant for arrest nor a search warrant. While outside the house, one of the officers thought that he heard an adding machine. These machines are frequently used in the numbers operation. Believing that the numbers game was in process, the officers sought admission to the house.

[*][453]
"[*] One of them opened a window leading into the landlady's room and climbed through. He identified himself to her and admitted the other officers to the house.
"After searching the rooms on the ground floor, they proceeded to the second floor. The door of an end bedroom was closed. But one of the officers stood on a chair and looked through the transom. He observed both petitioners in the room, as well as numbers slips, money piled on the table, and adding machines. He yelled to McDonald to open the door and McDonald did so. Both petitioners were arrested, and the officers seized the machines, a suitcase of papers, and money. Whether these machines and papers should have been suppressed as evidence and returned to petitioner McDonald is the major question presented.
"The Fourth Amendment to the Constitution provides: `The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' This guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike. It marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on probable cause supported by oath or affirmation. And the law provides as a sanction against the flouting of this constitutional safeguard the suppression of evidence secured as a result of the violation, when it is tendered in a federal court. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas. 1915C, 1177.
"The prosecution seeks to build the lawfulness of the search on the lawfulness of the arrest and so justify the [*]search and

[*][454]
seizure without a warrant. See Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, 148, 51 A.L.R. 409; Harris v. United States, 331 U.S. 145, 150, 151, 67 S.Ct. 1098, 91 L.Ed. 1399, 1405, 1406. The reasoning runs as follows: Although it was an invasion of privacy for the officers to enter Mrs. Terry's room, that was a trespass which violated her rights under the Fourth Amendment, not McDonald's. Therefore so far as he was concerned, the officers were lawfully within the hallway, as much so as if Mrs. Terry had admitted them. Looking over the transom was not a search, for the eye cannot commit the trespass condemned by the Fourth Amendment. Since the officers observed McDonald in the act of committing an offense, they were under a duty then and there to arrest him. See 4 D.C. *406 Code, §§ 140, 143 (1940). The Arrest being valid the search incident thereto was lawful.
"We do not stop to examine that syllogism for flaws. Assuming its correctness, we reject the result.
"This is not a case where the officers, passing by on the street, hear a shot and a cry for help and demand entrance in the name of the law. They had been following McDonald and keeping him under surveillance for two months at this rooming house. The prosecution now tells us that the police had no probable cause for obtaining a warrant until, shortly before the arrest, they heard the sound of the adding machine coming from the rooming house. And there is vague and general testimony in the record that on previous occasions the officers had sought search warrants but had been denied them. But those statements alone do not lay the proper foundation for dispensing with a search warrant.
"Where, as here, officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant. A search without a warrant demands exceptional circumstances, as we held in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, supra. We will not assume that where a defendant has been under

[*][455]
surveillance [*]for months, no search warrant could have obtained. What showing these officers made when they applied on the earlier occasions, the dates of these applications, and all the circumstances bearing upon the necessity to make this search without a warrant are absent from this record. We cannot allow the constitutional barrier that protects the privacy of the individual to be hurdled so easily. Moreover, when we move to the scene of the crime, the reason for the absence of a search warrant is even less obvious. When the officers heard the adding machine and, at the latest, when they saw what was transpiring in the room, they certainly had adequate grounds for seeking a search warrant.
"Here, as in Johnson v. United States and Trupiano v. United States (334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663), the defendant was not fleeing or seeking to escape. Officers were there to apprehend petitioners in case they tried to leave. Nor was the property in the process of destruction or as likely to be destroyed as the opium paraphernalia in the Johnson Case. Petitioners were busily engaged in their lottery venture. No reason, except inconvenience of the officers and delay in preparing papers and getting before a magistrate, appears for the failure to seek a search warrant. But those reasons are no justification for by-passing the constitutional requirement, as we held in Johnson v. United States, supra, 333 U.S. p. 15, 68 S.Ct. 367, 92 L.Ed. 441.
"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection

[*][456]
of crime and arrest [*]of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."
*407 The eye peering over a transom or peeking through a crack in the garage door does not come within the open-view doctrine and evidence seized through such a search without a warrant is not admissible without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.
In Cobb v. State, supra, we demonstrated that grounds surrounding a building are not included within the protection of the Fourth Amendment. Therefore, a pocketbook found on those grounds in open view would not be the result of an illegal search. While the grounds surrounding a building may not be protected, the building itself is protected, as Section 22 of the Declaration of Rights of the Florida Constitution, F.S.A., and the Fourth Amendment to the Constitution of the United States of America are identical and protect the rights of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. The meaning of the word "houses" may be discerned in part from the cases cited in 79 C.J.S. Searches & Seizures § 13. We quote from § 13 entitled "Curtilage and Appurtenances":
"It is generally held that the constitutional guarantee against unreasonable searches and seizures is not limited to the home or house but extends to the curtilage or the immediate surroundings within the curtilage; and accordingly the protection of the provisions has been held to extend to a barn, a henhouse, a cellar, a garage beneath a dwelling, a hog lot, a garden and pond within a few yards of the residence, a shed and a smokehouse. On the other hand, it has been held that the guarantee against unreasonable searches and seizures does not apply to enclosed or unenclosed grounds around houses, or to buildings detached from the residential structure, at least where such buildings are leased to, or controlled by, another. The protection has been held not to extend to a garage which is disconnected from the dwelling or to a shed and vacant premises not connected with the owner's home." (citations omitted)
As can be seen then, a search warrant is required to pry into certain buildings and structures and is not required to examine others as certain exemptions may exist which remove the structure or building from the protection of the Fourth Amendment. A careful reading of the record herein has disclosed that no exception existed which would exempt the garage in question from the requirements of the Fourth Amendment. To excuse the absence of a search warrant, a showing must be made by those who seek exemption from the requirements of the Fourth Amendment that the circumstances of the situation permitted it or that the exigencies of the situation made that course imperative. McDonald v. United States, supra; United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59, 61 (1951); and Chimel v. California, supra.
Therefore, the defendants, appellants herein, made a prima facie showing of the illegality of the search and seizure in the court below and the State did not carry its burden of showing that an exemption existed which would take the search and seizure in question out of the protection of the Fourth Amendment. It was therefore error on the part of the lower court to deny the defendants' motions to suppress.
The State urges that an exception does exist which would exempt them from the requirements of the Fourth Amendment in that the police officers in the instant case were afraid that appellants would try to dispose of or destroy the evidence which was the subject of the search and seizure in the instant case. To dispose of this contention we need merely to point out that appellants were asleep inside the house and that the police officers had the house completely surrounded. Several officers *408 could have remained on the premises while others went to secure a warrant.
Under McDonald v. United States, supra, the search which uncovered a boat trailer and motor by peeking through a garage door was illegal. Under Chimel v. California, supra, the seizure of the boat trailer and motor without warrant after the arrest had been made was illegal, and the direct fruits thereof, to-wit, photographs of the boat and trailer, should have been suppressed. It was reversible error not to have done so.
With regard to the confessions, however, we cannot say at this time that either of them was fatally "poisoned" by the illegal search. The record is silent as to all the facts and circumstances of their making except that, in point of time, they were made after the defendants were "confronted" with the seized evidence. Many other factors may have existed or have operated on the minds of the defendants, or either of them, other than the confrontation of the evidence itself, which were so disconnected with the illegality of the search that the confessions were purged of any taint. In Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, the Supreme Court said:
"We need not [*] [371 U.S. 488] hold that all evidence is `fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."
Accordingly, it is for the trial judge to determine, if there is a re-trial hereof, upon a proffer of the confessions into evidence, whether the totality of circumstances are such as to warrant their exclusion as "poisoned fruit." See, e.g., United States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1165 (1967).
Reversed and remanded for a new trial as to both appellants.
PIERCE and McNULTY, JJ., concur.